---
Whiting *v.* Barney.
---

---

WHITING *vs.* BARNEY and others, executors &c.

Where professional communications are made by two or more clients jointly, to their mutual legal adviser, the seal of confidence can only be removed by *all* of them. The consent of even a majority is not sufficient; and one or more of them cannot require a disclosure of the communication, as evidence against the others, without their consent.

In a litigation subsequently arising between the parties, out of the very matter respecting which they took advice, one of them cannot, as against the other, and without his consent, call upon the attorney to disclose the communication made to him in professional confidence, by *both*, jointly. JOHNSON, P. J. dissented.

Nor will the fact that one of the parties, who has since died, might, were he living, be called upon to prove the facts which were stated by him to the attorney, entitle the other party to the testimony of the attorney.

Communications made by a lender to his attorney, respecting a loan, after the making thereof, when no one else was present, and which were drawn out in consequence of the confidential relation existing between the lender and the attorney, are also privileged.

THIS was an appeal from a judgment entered at a special term. The action was brought to set aside and cancel a bond and mortgage, executed by the plaintiff to David Barney, the defendants' testator, on the ground of usury. On the trial, *John P. Hulburt* was called as a witness by the plaintiff, and testified: "I live in Auburn; knew Captain Barney in his lifetime; know the plaintiff in this suit; I recollect their being at my office at one time, together, for the purpose of a money transaction; it was on the 25th of June, 1857. They came together, to my office; I was then

an attorney and counsellor at law; I think Captain Barney remarked to me that he and Mr. Whiting would like to see me alone; there were other people in the office, at the time; we then went into an adjoining room that belonged to my office; when we got in there, they both spoke on the subject of the business, addressing their remarks to me and to each other, more or less." Question. "What was the subject of conversation between you there?" The counsel for the defendant objected to this question, and to any testimony of what took place at this interview, on the ground that the conversation was privileged; and the following testimony was taken subject to the objection. Answer. "The subject was a proposed loan of money from Captain Barney to the plaintiff, the terms, amount, condition and manner of effecting the loan. I think Captain Barney first said that the plaintiff was desirous of loaning some money from him, and that they had had some conversation on the subject. That the plaintiff wanted the loan of $600, and that he could not let him have that amount at that time, nor could he tell exactly what amount of money he had on hand then, but with what he had on hand, and what he could raise soon he could make out the amount which the plaintiff wanted, if the terms could be agreed upon. Barney said that he and the plaintiff had had conversation in respect to those terms, and that the plaintiff had proposed or agreed to allow him twelve per cent interest; I cannot tell which. Barney then asked me if there was any way that that amount of interest could be legally taken by him; if I could fix it in such a manner that it would be legal between them," &c. "There was some talk about how the plaintiff was to secure the loan. Barney said that the plaintiff owned real estate, so situated that he could not, or did not like then to execute a mortgage, but the plaintiff would give his note, if that would answer, for what he might receive on that day towards the $600; and he told the plaintiff that he should want some security up to the time that he could give security on his real estate, and asked the plain-

Whiting *v.* Barney.

tiff if he could not get him a note with indorsers, &c. and bring it to me and take up his individual note, then to be given. * * * Subsequently Barney said that when the exchange of notes was made, the plaintiff must deposit something with me towards the extra interest." The money the plaintiff had, with his bank account, amounted to $366. The witness drew a note for that amount, which was signed by the plaintiff, and the money paid over to him by Barney. The witness was to keep the note, till the indorsed note and the deposit of extra interest should be brought to him; and it had been in his possession ever since.

The witness was then asked, "Had you any subsequent conversation with Captain Barney, in reference to the exchange of notes?" The question was objected to by the counsel for the defendants, on the ground that the communication inquired for was privileged; and the testimony was taken subject to the objection. Answer. "I had. Captain Barney came to my office and told me that the plaintiff had given him a note, in place of the one deposited with me, that was satisfactory to him. I then asked him if I should give this note to the plaintiff. He told me not to give up the old note, 'for,' said he, 'there has been no extra paid yet;' and he told me to keep the note, and what memorandum to make on it." "Barney gave the reason why he wanted this disposition made of the note. That there was something yet to be done by the plaintiff; that he had not, thus far, complied with the agreement, as to the amount of interest above seven per cent." Question. "Had you any conversation with Captain Barney after that, in which the subject of a mortgage given by the plaintiff and his wife to him was spoken of? If so, what was it?" This question was also objected to by the counsel for the defendant, as calling for a privileged communication, and the following testimony was taken subject to such objection. Answer. "I subsequently saw Captain Barney, at my office, and he told me that he had let the plaintiff have more money, and that he had taken a mortgage from

the plaintiff on real estate, and embraced in it the amount loaned at my office, as also the second loan." On his cross-examination, the witness testified that he was Barney's general legal adviser, in relation to most matters of business; at times both as to his investments and collections of money. That he did about all his law business—all, as far as he knew—and his business pertaining to the completion of loans. That at the time of the first conversation, he had business in his hands, for Barney, in matters between him and other persons, as well as at the time of the second conversation.

The justice, at special term, directed a judgment to be entered, in favor of the plaintiff, for the relief demanded in the complaint. The defendants excepted to the decision, and to the refusal of the court to strike out the testimony objected to.

*N. T. Stephens*, for the appellants.

*S. Giles*, for the respondent.

J. C. SMITH, J. The principal question in this case is whether the communication was privileged, which the witness Hulburt testified was made to him by the defendants' testator, on the 25th of June, 1857. On that occasion the testator and the plaintiff, his son-in-law, went together to the office of the witness, who was an attorney at law, and had been for many years the testator's legal adviser, and after retiring with him to a private room, the testator, in the presence of the plaintiff, made to the witness the communication in question in relation to the terms and amount of a proposed loan of money from the testator to the plaintiff, for the purpose of getting his advice respecting the legal effect of their contemplated arrangement.

If I rightly apprehend the facts of the case, the plaintiff was present, not as a mere bystander or witness; there was no controversy between him and the testator, and none was

expected; but the advice of the attorney was sought by them jointly. As is said in the opinion delivered at special term, "the evidence fails to show that the witness was acting as the legal adviser of one party more than the other." The precise question, therefore, is whether in a litigation subsequently arising between the parties out of the very matter respecting which they took advice, one of them may, as against the other, and without his consent, call upon the attorney to disclose the communication made to him in professional confidence, by *both*, jointly.

No rules of evidence are better established than that confidential communications, made by a client to his legal adviser, are privileged; that the protection extends to every communication which the client makes to his legal adviser, for the purpose of professional advice or aid, upon the subject of his rights or liabilities; and that the seal of the law, once fixed upon them, remains forever, unless removed by the *party himself* in whose favor it was there placed.

It seems to result necessarily from these rules, that where professional communications are made by two or more clients jointly to their mutual legal adviser, the seal of confidence can only be removed by *all* of them; that the consent of even a majority is not sufficient; and that one or more of them cannot require a disclosure of the communication as evidence against the others, without their consent.

Unquestionably, the communication in this case was so far privileged as that the attorney would not be required or permitted to disclose it as a witness in favor of a *third* person, against both his clients, without their consent. Even if the suit of the third person were against one of them alone, the consent of *both* would be requisite. This position is sustained by several adjudications. (*Robson* v. *Kemp*, 4 *Esp.* 233. *Same* v. *Same*, 5 *id.* 52. *Doe dem. Strode* v. *Seaton*, 2 *Ad. & El.* 171. 29 *Eng. Com. Law R.* 62. *The Bank of Utica* v. *Mersereau*, 3 *Barb. Ch. R.* 528.) But the communication cannot be both privileged and open. If the mouth of

the attorney is closed as to one person it is so as to all the world. I am unable to see upon what principle the *plaintiff* can call upon the attorney to disclose a communication which the law will not require or permit him to divulge as a witness at the request of any other person, without the consent of the defendants.

The case would have been materially different if the parties, when they went to the attorney, had been litigants, or in dispute; or one had preferred a claim against the other, or had *exclusively* employed the attorney, and sought his advice; or the attorney had been called on merely to *witness* a transaction between the parties. In either of those cases the communication would not have been privileged, as against *any* one. But it is claimed by the plaintiff that the parties were *adverse* to each other, as they sought advice respecting a transaction in which one was a borrower and the other a lender. It is true they contemplated a loan by one to the other, but it had not been made, and they were mutually desirous of learning whether the mode in which they proposed to effect it would be lawful. But even if they merely employed the attorney to draw an agreement, by which one became the debtor of the other, their communications in respect to the business in hand would have been privileged. In *Robson* v. *Kemp*, and also in *Strode* v. *Seaton*, (*sup.*) the parties were vendor and vendee, and the attorney was employed to draw the conveyance.

It is also claimed by the plaintiff that he has a right to the testimony of the attorney, inasmuch as he might call the defendants' testator, if he were living, to prove the facts which were stated by him to the attorney. Possibly, under the modern statute permitting a party to call his adversary as a witness, the party called may be required to testify to any fact which could be proved by his declarations to his attorney, if the latter were permitted to testify. Now, as before the statute, the *attorney* is not permitted or required to violate the confidence of his client. I think it may be

Whiting *v.* Barney.

confidently asserted that the law never required or permitted the *legal adviser*, without the consent of his client, to testify to a communication otherwise privileged, simply because it could be proved by *another* witness. Thus, in *Carpmeal* v. *Powis*, (1 *Phil.* 687,) it was held that a solicitor is not at liberty to disclose communications which he had had, either with his client, or with the *agent* of his client; but, *semble*, if the agent had been examined, he would have been bound to answer. So, in *Bunsbury* v. *Bunsbury*, (2 *Beav.* 173,) it was held that communications made through a *third person*, from a client to a solicitor, are privileged, if otherwise entitled to be so. To the same effect is *Walker* v. *Wildman*, (6 *Mad.* 47.)

My attention has not been called to any reported case which seems to me to authorize the reception of the testimony in question. The first case cited in the opinion delivered at special term is *Coveney* v. *Tannahill*, (1 *Hill*, 33.) The plaintiff in that case, in adjusting an account with a third person, and procuring a written acknowledgment of a balance due, called in a counsellor at law to witness the transaction, and it was held that he should be permitted to testify without the leave of his client; the court remarking "that what was done and said between the parties to the transaction, in the way of business, could not be turned into a confidential communication between attorney and client merely because the plaintiff had an attorney present to hear and see what took place." That decision, the correctness of which no one will question, would have been applicable to the case in hand, if Barney and Whiting had merely called in Hulburt to *witness* their agreement, and had not stated it to him for the purpose of getting his professional advice. In that very case Bronson, J. commenting on the case of *Robson* v. *Kemp*, (*supra*,) suggested as a reason for the decision that "it may have been thought important that the witness acted as attorney for *both* parties." In *Grif-*

*fith* v. *Davies*, (5 *Barn. & Ad.* 502; 27 *Eng. Com. Law R.* 114,) the witness, as the attorney of the defendant, went with him to the plaintiff, and on that occasion heard a conversation between them respecting a proposed compromise of the plaintiff's demand; and it was held that this was not a confidential disclosure to the attorney, but an open communication from one adversary to another, witnessed by the attorney of one party.

*Ripon* v. *Davies*, (2 *Nev. & Man.* 310; 28 *Eng. Com. Law R.* 358,) was assumpsit for work and labor. In order to show the services, the plaintiff called a person who had been the attorney of the defendant, to prove admissions made by the defendant, and by the witness as his attorney, in the course of a conversation between them and the plaintiff, subsequently to the commencement of the suit. Held that this was an open communication made by one party to a suit to the other, and not a private communication made by the client to his attorney.

*Shore* v. *Bedford*, (5 *Man. & Gr.* 271; 44 *Eng. Com. Law R.* 149,) was an action upon the warranty of a horse. Defendant contended that he acted in the matter only as the agent of one Pithers. Before suit the parties went together to the office of one Ormand, who had been the attorney of the plaintiff, but had never acted for the defendant, and on that occasion the defendant admitted, in the presence of the witness, a clerk of the attorney, that he had bought the horse from Pithers, and he instructed the witness to write to Pithers for the price, which he did. The clerk was held competent to prove this. The court regarded it as simply the case of two parties having a misunderstanding, going to the attorney of one of them, and coming to an arrangement. It is to be inferred from a remark of Erskine, J. that in his opinion, if the parties had come for the purpose of *consulting the attorney as to the best means of seeing Pithers*, the communication would have been privileged.

Whiting *v.* Barney.

In *Perry* v. *Smith*, (9 *Mees. & Wels.* 681,) upon the sale of an estate, the same attorney was employed by the vendor and the purchaser, and after the sale the defendant, being applied to by the attorney about the payment of the purchase money, said he was not ready to pay, and asked for time. Held that this communication was not privileged, as it was made by the defendant to the witness, not as his own attorney, but in his adverse character of attorney for the vendor. In neither of the last four cases was any statement made to the attorney in his *professional* character. In the first two the attorneys were mere *witnesses*, and in the last two they were the attorneys of the *opposite* parties only.

In *Weeks* v. *Argent*, (16 *Mees. & Wels.* 816,) it appearing that each party, with his own attorney, was present when the note in suit was given to secure a debt which one party was owing to the other, it was held that communications made by the plaintiff to his attorney on that occasion, in the presence of the opposite party and his attorney, were not confidential, as they were not made to his attorney alone. The distinction is obvious between this case and the one at bar, where no one was present but the attorney and his clients. These are all the cases cited at special term. They seem to me to fall short of sustaining the ruling below, and I apprehend they go as far in that direction as any cases that can be found in the books. I am of the opinion that the testimony of the attorney, respecting the communication made on the 25th of June, was improperly received.

I also think that the communications made by the testator on the occasions subsequent to that date, spoken of by the witness, were privileged. They were made by the testator to his attorney, when *no third person* was present, and although they relate to the loan, which was the subject of conversation at the first interview, yet they are not a mere repetition of the statements then made, but are new and independent communications—in some instances—of facts which transpired subsequently to the first interview, and all were unquestion-

ably drawn out in consequence of the confidential relation which existed between the testator and the witness.

For these reasons I think the judgment should be reversed and a new trial ordered.

WELLES, J. concurred.

JOHNSON, P. J. dissented.

New trial granted.

[MONROE GENERAL TERM, June 2, 1862. *Johnson, J. C. Smith* and *Welles,* Justices.]