## PROUTY *vs.* EATON and wife and others.

The defense of usury is not a counter-claim within the meaning of the code.

Matter which shows that the plaintiff never had any cause of action, against the defendant, which the law would aid him in enforcing, is no counter-claim. *Per* JOHNSON, J.

Payment and discharge of a mortgage given as collateral security for the payment of a prior mortgage, operates as a payment upon the principal debt. *Prima facie* there is nothing else upon which the money paid can apply.

Although the defendants, in an action to foreclose a mortgage, fail to set up in their answer, distinctly, the defense of payment, alleging merely an accord and satisfaction, and that nothing remains due, yet if evidence showing that the debt has been paid, is received, without objection, the defendants are entitled to the benefit of such proof.

The exclusion of the testimony of a party in his own behalf, in respect to a transaction between him and a deceased person, against the executors of the latter, specified in section 399 of the code, extends only to evidence of that character when offered against a party who has acquired title to the cause of action *immediately* from such deceased person, and not where the party has acquired such title from the decedent *mediately* or remotely. In all other cases parties are competent to testify to such facts, as much as to any other.

Thus where the plaintiff in a foreclosure suit, though originally the immediate assignee of the deceased mortgagee, had assigned the mortgage to other

persons, viz. the executors of the mortgagee; *Held* that he was by that
assignment wholly divested of all title; and that upon the executors re-as-
signing the mortgage to him, his title was then derived immediately and
entirely from them, and from no other person; and he stood as though he
had never had any title, other than that derived from the executors; the
re-assignment not restoring him to his original condition of immediate
assignee of the deceased mortgagee.

The testimony of a person employed by a mortgagee as his attorney and legal
adviser at the time of taking a mortgage, in respect to the terms of the
bargain between the mortgagors and the mortgagee, upon which the bond
and mortgage were executed, is not liable to the objection that the bargain
thus made was in the nature of a privileged communication between attor-
ney and client.

ON or about the 8th day of November, 1838, the defend-
ants, Charles B. Eaton and wife, executed to Phineas
Prouty, senior, now deceased, a mortgage, bearing date on
that day, upon certain premises, being sixty acres of land in
the town of Phelps, Ontario county, N. Y., which mortgage
was collateral to a bond made by the defendant Charles B.
Eaton, of the same date, to said Phineas Prouty, senior,
which bond and mortgage were conditioned to pay $1700 in
five years from the date thereof, with interest semi-annually.

On or about the 16th day of November, 1838, Eaton and
wife executed to the said Phineas Prouty, senior, another
mortgage, dated that day, upon a lot of $69\frac{3}{4}$ acres, and upon
a lot of three acres, and upon another lot of three acres, in
said town of Phelps, other land than that described in the
first mentioned mortgage, which was delivered and taken as a
collateral security to the first mentioned mortgage and bond,
but which last mortgage was conditioned to pay $1800 in five
years from the 8th November, 1838, and interest semi-annu-
ally. Some time in the year 1840 or 1841, Phineas Prouty,
sen. commenced a foreclosure of the mortgage first above de-
scribed, by advertisement under the statute. The defendant
Charles B. Eaton thereupon filed his bill in the court of chan-
cery, alleging that the said mortgage was usurious and void,
and obtained an injunction restraining such foreclosure. To
this bill Phineas Prouty, sen. put in an answer. After the

cause was at issue on the pleadings, and on or about the 9th of June, 1841, Prouty and Eaton met, and Eaton and wife conveyed to Phineas Prouty, sen. a lot of land in Michigan, for a consideration of $400, and a lot of land in Phelps for a consideration of $1000; and the said Prouty discharged of record, and acknowledged paid, the mortgage secondly above mentioned, given as collateral to the bond and the first mentioned mortgage, and no further proceedings were had in the statutory foreclosure, or in the action in the court of chancery, and nothing has since then been paid or collected on the bond and mortgage. On or about the 21st day of January, 1860, Phineas Prouty, sen. assigned the bond and mortgage first above mentioned to Phineas Prouty, jun., the plaintiff in this action. It did not appear in proof that any consideration passed from the plaintiff to Phineas Prouty, sen. therefor. On or about the 21st day of January, 1860, this action was commenced by Phineas Prouty, jun. the present plaintiff, and issue was joined therein by the service of the answer on or about the 2d day of April, 1860. On or about the 21st of February, 1862, Phineas Prouty, sen. departed this life, and the plaintiff and Alex. L. Chew and Thomas Hillhouse were appointed executors of his last will and testament, and shortly after the plaintiff assigned, by instrument in writing, and delivered the said bond and mortgage to said executors. The bond and mortgage have never been assigned or delivered back to Phineas Prouty, jun. the plaintiff in this action. The action was referred to Hon. S. G. Hadley, as sole referee, and was tried before him. The referee reported in favor of the plaintiff upon all the issues in the case, and that $1339.49 was due to him upon the said bond and mortgage; and in his report ordered and adjudged a sale of the mortgaged premises, and directed the avails of the sale to be applied, first, to pay the plaintiff's costs and the amount found due to him, and referred it to the sheriff of Ontario county to make the sale. From the judgment entered on the report of the referee the defendants Eaton and wife appealed.

*C. J. Folger,* for the appellants.

*Dusinberre & McDonald,* for the respondent.

*By the Court,* JOHNSON, J.   It appears upon the face of the bond and mortgage in question that they had not been due twenty years when the action was commmenced.   They bear date November 8, 1838, and are payable five years from date.   The debt therefore did not become due until the 8th November, 1843.   This action appears to have been commenced in 1860.   No presumption of payment therefore arises from lapse of time.

The defense of usury is not a counter-claim, within the meaning of the code.   Such a defense asserts simply that the plaintiff's claim is void in law, and cannot be enforced, by reason of some inhering vice, which destroys it as a legal claim.   It does not seek to establish another claim, counter to the plaintiff's, to apply by way of extinguishment or otherwise against it, but to show merely that the plaintiff's claim has not and never had any legal existence.   I do not see that argument can make this proposition any plainer; and it seems to me that no authority can be necessary to justify it.   It must be that matter which shows that the plaintiff never had any cause of action, against the defendant, which the law would aid him in enforcing, is no counter-claim.

I am entirely unable to see how the referee, upon the undisputed facts before him, could have found that the debt in question had not been paid, and deduced the legal conclusion that there was still remaining due any sum whatever thereon.   The bond and mortgage in question are dated November 8, 1838, and are to secure the payment of $1700, in five years, with interest semi-annually.   On the 16th of the same month and year, the defendants executed and delivered another mortgage, to the same mortgagee, upon other

lands, for the consideration of $1800, which, as appears upon the face of the instrument and as found by the referee, was made and accepted and held as collateral security for the payment of the bond and mortgage. On the 9th of June, 1841, the defendants conveyed to the mortgagee two parcels of land; one in the state of Michigan for the consideration of $400, as expressed in the deed, and the other for the consideration of $1000. These two amounts were indorsed on the bond and mortgage in question. On the same day the mortgagee executed a satisfaction and discharge of the second mortgage, which was duly acknowledged on that day, and recorded in the office of the county clerk, where the mortgage was recorded, on the first day of November thereafter. This discharge certifies that the mortgage "is paid, satisfied and discharged." This being matter of record, is at least *prima facie* evidence that the said mortgage was satisfied by payment of the amount to the mortgagee. This might perhaps have been explained, and the real consideration for the discharge shown. But there is no evidence upon the subject, one way or the other. As it stands upon the evidence, the fact of the satisfaction and discharge of that mortgage, by payment, appears; nothing more nor less. This is in no respect negatived by the finding of any fact by the referee. All he finds upon this subject is that Prouty, the mortgagee, undertook to foreclose the first mortgage. That the defendants filed a bill in chancery to restrain the proceedings to foreclose. That issue was taken upon the allegations in the bill. That on the 9th of June, 1841, the suit was settled. That the two parcels of land were conveyed by the defendants for the sum of $1471.48, and the amount indorsed on the bond and mortgage in question, "and thereupon the said Phineas Prouty, deceased, discharged the said collateral mortgage, by his written discharge." Thus it will be seen that the fact is not found, either that the mortgage was thus discharged in consideration of these conveyances of the land, or that

it was discharged without further payment, in consideration of the settlement. Indeed I do not see how, without some further evidence, either of these essential facts could have been found. The fact stands simply proved that the collateral mortgage is paid. This, as matter of law, is a payment upon the principal debt. *Prima facie* there is nothing else, upon which the money paid could apply. It seems to me, therefore, as the case stands, both upon the evidence and the finding of facts, that the legal conclusion that there was still remaining due and unpaid, on the mortgage, the sum of $1339.49, or that any sum remained due, is entirely contrary to the evidence, and wholly unsupported by it. The defendants, it is true, have not distinctly in their answer set up the defense of payment. They allege an accord and satisfaction, and that nothing remains due. But the evidence of the discharge was received without objection, and if it proved that the debt had been paid, and nothing remained due, the defendants are entitled to the benefit of such proof.

It was, clearly, no defense that the plaintiff had assigned the bond and mortgage to the executors of his deceased assignor, even if it had not been reassigned. The transfer was *pendente lite*, and in such a case the code, section 121, provides for the continuance of the action in the name of the original party.

The defendant Eaton was clearly a competent witness to prove the original transaction between himself and Phineas Prouty, deceased, which resulted in the giving of the bond and mortgage in question, unless the plaintiff is to be regarded as a party deriving title to the cause of action *immediately* from the deceased, in his lifetime. The exclusion extends only to evidence of that character when offered against a party who has acquired title to the cause of action *immediately* from such deceased person, and not when the party has acquired such title from such deceased person

*mediately* or remotely. This is the plain reading and meaning of the provision. In all other cases parties are competent to testify to such facts, as much as to any other.

How then stands the plaintiff in this respect? It is certain that his title to the cause of action, which he had at the time of the trial, he derived *immediately* from the executors of Phineas Prouty, deceased, and not from Prouty himself. Originally the plaintiff was the immediate assignee of the deceased assignor. But the title thus acquired he had transferred to other persons for a valuable consideration, to wit, to the executors of such deceased assignor. Thus the title to the cause of action which the plaintiff derived immediately from the deceased, he transferred wholly to the executor. He was then wholly divested of all title. The executors thus acquired title immediately from him, and mediately or remotely, only, from the deceased. And so it was with the plaintiff, when it was reassigned to him by the executors, before the trial. His title to the cause of action, of which he had become wholly divested, was then derived immediately and entirely from the executors, and from no other person whatever. He was then a person or party, who had once had the title to the cause of action, derived immediately from the deceased person, but who did not then so hold it. The title he then held he derived immediately from others. Of course he then stood as though he had never had any title, other than that derived from the executors. The reassignment did not restore him to his original condition of immediate assignee of the deceased assignor. (*Hawks* v. *Hinchcliff*, 17 *Barb.* 502.) It is perfectly immaterial what object the plaintiff had in view, in making the assignment to the executors. It is clear that he transferred to them all the title he had, and at the time of the trial his only title to the cause of action was derived immediately and solely from persons other than the deceased assignor. He had voluntarily bartered away his former status, and stood then in an entirely new relation to the original

assignor. The testimony of the defendant was, therefore, improperly excluded.

The sworn answer of Prouty, senior, in the chancery suit, was I think properly rejected. The plaintiff was an assignee for a valuable consideration. The original assignment to him was upon a valuable consideration; at least such is the presumption. It is under seal, and purports upon its face to be upon a good and valuable consideration. And the subsequent assignment to him from the executors is shown to have been upon his paying back to them what they paid him originally when they took the assignment from him. Being an assignee for a valuable consideration, the declarations of the original assignor were not competent.

The referee erred in excluding the testimony offered by the witness Woods, to prove the bargain between the mortgagors and the mortgagee, upon which the bond and mortgage in question were made. It was excluded upon the objection that the bargain thus made was in the nature of a privileged communication between attorney and client. The witness was shown to have been at the time the attorney of the mortgagee, and his legal adviser in the transaction, but not of the mortgagors. This ruling goes a decided step beyond the principle established by this court in *Whiting* v. *Barney,* (38 *Barb.* 393.) In that case the court went to the extraordinary and unprecedented length, as I then thought, of holding that a negotiation or bargain between borrower and lender, in the presence of an attorney, when both had consulted on the subject, could not be proved by the attorney, on the ground that it must be regarded as under the seal of confidence, as respects the attorney, although either party might, if living, testify to it and prove it by his own oath against the other. But, even in that case, it is conceded by the learned justice who delivered the opinion, that had the attorney been the attorney and adviser of one of the parties only, the matter would not have been privileged. That is this case. The distinction is perhaps not entirely obvious;

but as a rule of law it is unquestionably sound.    Under such circumstances there can be no pretense that it is a confidential communication between attorney and client.

The judgment must therefore be reversed and a new trial ordered, with costs to abide the event.

[MONROE GENERAL TERM, December 7, 1863.   *Welles, E. D. Smith* and *Johnson*, Justices.]