Gtegerich, J.
The plaintiff, as sole survivor and successor in interest of the firm of N. K. & M. Connolly, seeks in this action to reform a deed.
The conveyance was made by the defendants John Keenan and his wife Delia to Nicholas K. Connolly, is dated April 20, 1895, and, for a consideration of $18,000, purports to convey the premises' known as 227, 229 and 231 East Eighty-second street, New York City, for the term of two years, further providing that, on the expiration of that period, to wit, on the 20th day of April, 1897, the grantee should reeonvey to the defendants on payment by them of the sum of $18,000. The deed also provides that the grantee- should assume the payment of mortgages then resting upon the property and aggregating $39,000.
Judgment is prayed for striking out the assumption clause and declaring the deed to be an absolute conveyance, and for an accounting of the rents of the premises by the defendant John Keenan.
Both defendants plead usury, alleging that the $18,000 mentioned was a loan made by N. K. & M. Connolly under an agreement for eight per cent, interest thereon.
The defendant Delia Keenan also pleads payment, and the defendant John Keenan sets up- a counterclaim' for $38,791.66, a balance of moneys claimed to- have- been advanced by him for the use of N. K. & M. Connolly.
The first question is whether there was usury. The facts relating to that branch of the case and important to be Stated are as follows:
John Keenan and the Connollys, especially Nicholas, were old and intimate friends and had been engaged in various business enterprises together, they living and, for the most *591 part, doing business in Canada, he living in, and doing business in and about, Hew York City. Keenan, whose deposition was taken before the trial by reason of his illness, stated therein that late in 1894, Hicholas asked him if he “ could not see a place to put $20,000. at fair interest,” the rates in Canada not being high. He replied that he die not. Later he himself had use for $18,000, and wrote the following letter:
“ Hew Yobk, April 12, 1895.
“ 1y Deab Mb. Connolly :
I can place about $18,000 in Heal Estate that will neJ you eight per cent for two years. You will have no bothei except to receive your cheque for interest every month oi every quarter as you may desire. My own agent will take charge of the property for you as the property will have t<i be made over to you. Let me know what name to put in the deed. Do you wish it made out in your name or will I have both your names put in. I will also give you a contract signed by myself that the above will be carried out. I can place for two or three years about nine or ten thousand at 6 per cent, on Heal Estate. If you remember when I wrote you last, I explained that I could place some moneys for you on 60 days call. If I had heard from you by the first of the month I could have placed about $15,000. for you at those terms but as the party wanted to use it on the 10th, I had to get it for him from my bank at 6 per cent. Write and let me know if you want both or either of these transactions made.
“ Of course while we are always glad to see you, if you are busy there is no reason for you to come on as I can transact the business for you. All the family join in sending regards to yourself, Michael and families. Please answer.
“ Sincerely yours,
“ John Keenan.”
In response to this Hicholas sent a draft for $18,00G_ adnaitted to have been copartnership money, which Keenar. acknowledged receipt of as follows:
*592 “New Yobk, April 18, 1895.
“ My Deab Mb. Connolly :
“ Received your draft for eighteen thousand dollars ($18,000) and will invest it as I suggested to you and will mail you papers within a few days.
“ If you want to take up the other matter which I wrote you about give me at least ten days notice.
“ Sincerely yours,
“ John Keenan.”
At this time, the premises in suit were managed for Keenan by one Goodman, the agent mentioned in the letter of April twelfth, who had as an associate in his office ah attorney named Isaac M. Aron.
Keenan testified: “ The instructions I gave Goodman was to see that Connolly would be protected for this loan of $18,000. in case I died and to allow so much interest on the loan.”
Shortly afterward the following letter was sent to Connolly: .
“ Isaac M. Aeon,
“Attobnby and Counsellob-at-Law,
“ 1515 Eibst Avenue.
“ New Yobk, April 23, 1895. “Mb. Nicholas K. Connolly,
“Montreal, Canada:
“ Deab Sib.— I enclose contract in regard to property 227-229 & 231 E. 82nd Street, N. Y. City, duly executed by Mr. Keenan.
“ The Deed has also been executed and have recorded same with the Register of the County of New York. It is necessary that all deeds of conveyances in this County be recorded. It will take probably five or six weeks before I get it back from the Register, when I will immediately return it to you.
“Yours Resp’y,
“I. M. Aeon.”
*593 The contract referred to in the above letter is signed by the defendant Keenan, and so far as necessary to quote is as ■follows:
" Witnesseth, that the said party of the first part hereof, .(Keenan) has by Deed bearing date the Twentieth day of April, 1895, for a valuable consideration, sold, assigned, transferred and set over, unto the said party of the second part (Nicholas K. Connolly) hereto certain real estate in the 'City of New York, which said property is more fully and ¡particularly described in said Deed, and
“ Wi-iebeas the said party of the first part is pursuant to .-said agreement of sale of said property compelled to guar-antee the said party of the second part, a certain percentage •of interest on his investment in said property namely the .sum of Eighteen thousand dollars,
“ Now, therefore, in consideration of the sum of One Dollar, lawful money of the United States of America, in hand paid to the party of the first part hereto, by the said party ■of the second part herein, the receipt whereof is hereby .acknowledged, the said party of the first part hereto, guarantees to the said party of the second part, that he will receive -during his ownership of said property herein referred to, the sum of eight (8) per cent, net, on the sum of Eighteen thousand ($18,000) Dollars, his investment in said property.”
The plaintiff, Michael Connolly, testified in a vague manner ■concerning his knowledge and recollection of the deed and its terms, stating that he first saw it some three or six ■months after its execution, but did not even then examine "its contents nor know that it contained any provision as to two years nor as to assuming the mortgages, he merely looking at it in a caréless manner, turning it over and -putting it back in the safe.”
Keenan’s testimony is similarly indefinite and unsatisfactory upon this point. He said “ I didn’t read the paper. T took for granted that Aron and Goodman — The instructions I gave Goodman were to see to it that Mr. Connolly was protected with regard to this loan and I do not remember the details of the papers.”
Remittances of $360 per quarter were sent by Goodman *594 to N. K. Connolly, being at the rate of eight per cent, per annum, and in the letter accompanying the remittances, the sum was designated as interest upon the mortgage held upon Mr. Keenan’s Eighty-second street property. This designation was adopted by Mr. Connolly’s clerk in acknowledging the receipt and the money thus came to be spoken of as interest upon a mortgage; but this circumstance cannot be taken to affect the question whether or not the transaction originally was a loan and usurious. Whether or not it was such must be determined upon the understanding the parties had or were chargeable with at the time the transaction was made, and not upon any construction which either side afterward may have placed upon it, except so far as such subsequent construction may throw light upon the original agreement. For this reason, I cannot give much weight to the circumstances that the present plaintiff first commenced an action upon the theory that the instrument now sought to be reformed was, in reality, a mortgage, and as such sought to foreclose it. The fact that the plaintiff has verified complaints so widely divergent in their allegations and the explanation which he attempts in his testimony for such course, may have importance as affecting his credibility, but I do not think are sufficient to warrant the conclusion that the transaction was ai the time regarded by the parties as a loan.
Even the testimony of Keenan, which is impressive because of the manifest restraint and care with which it was given,does not state that the transaction was a loan or that he designated it as such to Nicholas K. Connolly, the only one with whom he had any personal interviews preceding the transactions.
My conclusion is that this case presents a not. unusual instance where busy men, who have intimate relations and the utmost confidence in each other, manage their dealings in such a loose and careless fashion,. so far as their own attention to them is concerned, that it is difficult to decide what their understanding was at the time, if indeed, they took the trouble to give the matter sufficient thought to have any definite understanding.
Such being the facts, it is only fair to construe the trans *595 action as being what it would appear to be from Keenan’s letter to Nicholas K. Connolly, namely, an investment made through Keenan and not a loan made to him. The effect of the deed and the agreement, both subsequently executed, may be regarded as bringing Keenan into the transaction in a somewhat different relation than was indicated in the letter, namely, not only as one who guaranteed that for two years the net income from the investment should be not less than eight per cent., even though the property purchased might, in fact, produce less than that amount; but also as the owner of the property who, in return for the guaranty, was to have the option of repurchasing the premises at the expiration of two years. There is nothing in the case to show that there was any intention, at the time of the transaction, to make a loan to Keenan, or to any one else for that matter, but only to make an investment. There is nothing in the papers, as finally executed, that binds Keenan to pay the $18,000, in any event. It may have been and doubtless was his intention, owing to the circumstances under which the money was sent to him, to see to it that his friend should meet no loss either of principal or income, but the agents to whom he intrusted the duty of seeing to it, that the Connollys were protected, carefully refrained from including any provision in the papers executed that would indicate a loan. To have done so would have been to make a clear case of usury, and thus to have departed from their principal’s instructions, which were to protect the Connollys. To be sure, there is evidence that the premises in question were worth at the time a few thousand dollars more than the aggregate amount of the mortgages then upon it, increased by the $18,000 in question. But this disparity is so slight that it does not suffice to raise an inference of usury in the absence of any evidence to show any previous existence of the relation of debtor and creditor between the parties, or any intention on the part of the one advancing the money to exact excessive interest and at the same time an agreement for the repayment of the principal.
This option of repurchasing still survives xo the defendant Keenan, in my opinion. It is true that he did not *596 exercise it at the expiration of the two years fixed in the original agreement; hut he did go on making remittances at the rate of eight per cent., and these payments on his part, and the acceptance thereof on the part of the Connollys, operated as a continuance of the agreement originally limited to a period of two years. It is true also, that later, in January, 1900, Keenan decreased these remittances to $225 per quarter, being at the rate of five per cent, but these remittances continued to be accepted by the Connollys, and receipted for by their clerk as “quarterly interest on mortgage on 82nd Street property.” This was equivalent to a modification of the original terms to the extent of diminishing the rate from eight per cent, to five per cent. Still later, and in January, 1901, payments were discontinued altogether, Keenan then taking the position that as money was due to him from the plaintiff’s firm greatly in excess of $18,000, on account of advances made by him for their benefit, he was exonerated from any liability to make further payments to them. Immediately upon his taking this position, it was the right of the plaintiff’s firm, as I construe the relation between the parties, to insist that he at once exercise his option.to repurchase at $18,000, or that he surrender the property to them. That is to say, the defendant John Keenan must either surrender the property to the plaintiff as sole survivor and successor in interest of the firm of N. K. Connolly and, with his wife the defendant Delia Keenan, give a clear title thereto, and account for the rents and profits thereof since the date of the last payment of income, or he must pay the plaintiff the sum of $18,000 with interest at the rate of five per cent, from the date of such payment, and himself receive a clear title to the property. In either event, the prayer of the complaint that the assumption clause be stricken from the instrument should be granted. There was nothing in the negotiations between the parties that warranted its retention.
We now come to the consideration of the counterclaim set up by Keenan.
Some of his testimony, which, as above said, was taken before trial in the form of a deposition, was objected to and *597 properly, as being inadmissible under section 829 of the Code of Civil Procedure, in that it undertook to state personal transactions had by him with N. K. Connolly, a deceased member of the plaintiff’s firm, of which firm the plaintiff is sole surviving partner. The plaintiff is also the purchaser and assignee of the copartnership interest of his deceased brother.
It has been held that in an action for money loaned to the defendant, the latter is incompetent to testify to an agreement between him and the plaintiff’s partner since deceased under which he received the money. Corning v. Walker, 100 N. Y. 547.
On behalf of the defendant it is argued that the plaintiff himself was so far examined as to personal transactions and communications had by him with his deceased brother Nicholas, as to open the door to Keenan’s testimony, not only concerning the latter’s personal transactions with Nicholas in relation to the investment, but also in relation to the advances counterclaimed for. I do not think it permissible, however, to give such effect to the testimony of the plaintiff, which was limited strictly to transactions between himself and Nicholas concerning the $18,000 investment, but did not in any way touch upon the alleged advances set up in the counterclaim. In fact, the prohibition of section 829 has been applied so strictly as to preclude a defendant from testifying as to the final negotiations between himself and the plaintiff’s deceased partner, notwithstanding the fact that the plaintiff, a surviving partner, had testified to the preliminary negotiations in the same between himself and the defendant. Groodwin v. Hirsch, 37 N. Y. Super. Ct. 503. I have, therefore, decided that such portions of the deposition of the defendant Keenan as relate to personal transactions between himself and Nicholas should be disregarded.
But even if such rejected portions were taken into consideration, there is not enough evidence in the record to sustain the counterclaim, which is for moneys alleged to have been advanced by the defendant Keenan for the benefit of the plaintiff’s firm in an enterprise in which he and they *598 were jointly interested. The plaintiff admits that his firm had an interest in the profits of the enterprise, bnt claims they were to render services only, and were not required to, and did not, furnish any money. On this point, it is noticeable that Keenan himself did not testify that the moneys he asserts were furnished by him for the plaintiff’s firm were furnished by request, but only that they were furnished for their and his equal benefit. He does not even say that either of them at the time had knowledge that he was putting in the money which he now claims was on their account. In short, there is no evidence whatever of any request or agreement express or implied.
The record is equally barren of anything to show a subsequent ratification or adoption of the act which Keenan asserts was for their benefit. He does say that, after the death of Nicholas, and after he ceased to send the quarterly payments of income upon the $18,000, the plaintiff had an interview with him looking to the collection of the principal and interest, but that he explained that he was not in position to make such payment because of the investments he had been making on account of the plaintiff’s firm. But he does not follow up this testimony by saying that the plaintiff acquiesced by words or even by silence in this claim that such moneys had been invested for the benefit of the firm or that the firm was in any way liable for them.
I, therefore, reach the conclusion that the counterclaim should be dismissed for failure of proof and without prejudice to a new action to establish the same.
The defendant John Keenan must elect within eight days after the handing down of this opinion whether to take or surrender the property, as indicated above. If he elects to keep it, the time within which payment shall be made will be fixed in the decision. In either event the plaintiff may have costs. Let two days’ notice be given of the settlement of the decision.
Ordered accordingly.