BRIDGET MORRIS, Whose Maiden Name was Bridget FARLEY, also Called BRIDGET FARRELLY, Plaintiff, *v.* JOHN T. SHEEHAN, as Ancillary Executor of the Estate of FRANCIS J. LYNCH, Deceased, Defendant.

ANNE FARLEY, also called ANNE FARRELLY, Plaintiff, *v.* JOHN T. SHEEHAN, as Ancillary Executor of the Estate of FRANCIS J. LYNCH, Deceased, Defendant.

(Supreme Court, New York Special Term, June, 1920.)

Trusts — savings banks — non-residents — actions — wills — interpleader — residuary estates — judgments.

> It is well established that by comity between the states the disputed ownership of personal property of a decedent in a sister state is determined by the law of that state.
>
> Testator, a Roman Catholic priest, died a resident of Massachusetts in 1907, and, without the knowledge of his two nieces, residents of Ireland, had deposited money in a savings bank in New York city in form of a trust for each. In an action by them against the bank for possession of the moneys the ancillary executor was substituted as defendant by interpleader. *Held,* that by comity, the law of Massachusetts, under which the moneys fell into the residuary estate, which was given by the will to the bishop of the diocese of which testator had been a priest, was controlling, and judgment granted in favor of the defendant for a dismissal of the complaint but without costs.

ACTIONS concerning the ownership of funds held on deposit by a savings bank.

Louis Thompson, for plaintiffs.

Nicholas Dietz (Luke D. Stapleton, of counsel), for defendant.

FORD, J. These are two actions concerning the ownership of funds held on deposit by a savings bank in New York.

The defendant is ancillary executor of the estate of the Rev. Francis J. Lynch, a Roman Catholic priest, who died a resident of Massachusetts in 1907. In his lifetime the testator had in form deposited in the bank a fund in trust for each of the plaintiffs who are residents of Ireland and nieces of the testator. They had no knowledge of the transactions before his death. The slight evidence to the contrary is of too little probative value to merit serious consideration.

The plaintiffs commenced suit against the bank for possession of the moneys and the ancillary executor was substituted as defendant through interpleader. Both cases were tried together and may be decided as one since they involve precisely the same legal principles and raise identical questions of law.

First to be determined is whether the law of Massachusetts or that of this state controls. The plaintiffs insist that the ownership of the deposits must be determined by the law of this state while the defendant contends for the law of the other state as determining the question.

Under the law of either state it is conceded that the absolute ownership of the funds was in the testator until the instant of his death. Under the law of Massachusetts the moneys fell into his residuary estate and were subject to disposal by his will. This residuary estate, exclusive of the disputed moneys, amounted to upwards of $100,000, constituting the bulk of his property, and was given by his will to the bishop of his diocese as a corporation sole for charitable and religious purposes.

There is no public policy operative in favor of the plaintiffs since they are residents of a foreign country. By comity between our states it is well established that the disputed ownership of the personal property of a decedent resident in another state is

determined by the law of that state. I am of opinion that the law of Massachusetts must be held to be controlling under the circumstances of these cases.

But even under the law of this state it seems to me the defendant must prevail. Plaintiffs rely upon the case of *Matter of Totten,* 179 N. Y. 112, which lays down the rule concededly applicable to this controversy: "A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

Under this rule the facts in the present cases raise a presumption of ownership merely. But a presumption is not conclusive. It may be rebutted and the defendant has met this issue squarely. Indeed the long trial of the cases was almost entirely taken up with this phase of the controversy. The defendant set out to prove that the testator never intended that the funds on deposit should pass to other ownership either during his lifetime or afterwards.

It is shown that since 1869 the testator had made deposits in a large number of savings institutions in this state as well as in Massachusetts in his own name and in the names of others. Since deposits over a limited amount in one person's name would not draw interest, it was the practice of the decedent to open another account in which any excess might be depos-

ited and thus made to earn the usual savings bank return.

Separate accounts to the number of 164 were thus opened in his own name and nominally as trustee for numerous relatives, friends and acquaintances. Sometimes they were opened and active long after the death of the person for whose benefit they in form stood. In one case at least a seemingly fictitious name was used. At all times and in all ways the testator treated all these deposits, including those standing in the names of the plaintiffs, as his own. He added to them, drew from them both principal and interest, closed them, opened new accounts with the moneys so withdrawn in the names of different persons, and never seems to have thought of ownership or color of interest in any of the accounts outside of himself individually, except that he always seems to have regarded the funds as equitably belonging to his church, from which they came to him. He so repeatedly declared during his lifetime. The terms of his will in death bear out the sincerity of these professions made during life.

It is an impressive array of facts which the defendant adduces in proof of the absence of intention to give these particular relatives the funds which happened to be deposited in their names at the time of his death. The conclusion is irresistible that he never intended any of the deposits to pass out of his ownership during life or out of his estate after death. The presumption of ownership in the plaintiffs is amply rebutted even under the law of New York.

As to the objection of plaintiffs to the receipt of evidence tending to show the practice of defendant in respect of his multitudinous bank accounts after the two deposits in question were made and as to the motion to strike it out, it was received as the basis for determining whether there ever was a gift made by the

Supreme Court, June, 1920.     [Vol. 112.

testator, not in derogation of any previous acts or words of his constituting such gift. The gift could not be complete till the instant of his death in any event. All his acts down to his death were, therefore, competent as tending to show that there had never been a gift.

Judgment will be granted in favor of the defendants, dismissing the complaint and for the further relief prayed for, but without costs in either case.

Judgment accordingly.