## In the Matter of the Estate of ALEXANDER GILBERT CHRISTIE, Deceased.

Surrogate's Court, Kings County, April 29, 1938.

*Albert L. Wigor,* for Catherine Christie, as administratrix, etc., petitioner.

*James G. Moore,* for the respondent Peter Christie.

WINGATE, S. No rule of adjective law is of more constant application in Surrogates' Courts than that contained in section 347 of the Civil Practice Act which renders an interested witness incompetent to testify in certain enumerated situations in respect of personal transactions with a decedent. In view of this fact, the widespread unfamiliarity of a large proportion of the bar with the proper interpretation and effect of this vitally important tool in probate litigation is rendered the more unfortunate. The present litigation furnishes an excellent example of this condition.

As disclosed by the record, the present decedent died on December 30, 1935. At the time of his death he was conducting a small florist business at 561 Fifth avenue, Brooklyn, which had been given him by his father, the present respondent, some ten years before. This business was apparently not particularly profitable, since at his death he owed at least seventeen different creditors on accounts dating back, in some instances, for well over two years, and the transcript of a savings bank account, which is the storm center of the present controversy, discloses that since August 15, 1927, only one deposit, of $3.25, had been made therein, whereas during the same period withdrawals totaling $2,325 are shown.

The total assets of the decedent, excluding the savings account, consisted of a balance in the Brooklyn Trust Company totaling $26.24, the fixtures of his florist shop and a used automobile which was sold shortly after his death for less than $100.

Letters of administration were issued to the widow on January 13, 1936, and she attempted until the end of May following to continue the business with the help of the decedent's father. After that date she endeavored to conduct it alone until the following November, when she discontinued it and released her tenancy of the store.

The decedent, the widow and the father had all resided together prior to the death, and the father and widow so continued for some months thereafter. Whereas the widow qualified as administratrix, it is wholly patent from the record, including her own testimony, that she delegated all duties in this connection to her father-in-law and that he collected and disbursed all assets and acted substantially as her agent in the continuance of the business.

Excluding from consideration the savings bank account, it is demonstrated that he received estate assets consisting of the $26.24

Brooklyn Trust Company balance, $60 or $70 from the sale of the automobile, and $175 from the sale of the business fixtures, or a total of $271.24. According to his testimony, which was not controverted except by innuendo and attempts to cast ·suspicion upon his probity, the conduct of the business during the period in which he was connected therewith showed a net loss of $89.65, the total receipts amounting to $2,330.35 and the expenditures aggregating $2,420.

As against the demonstrated receipts of $271.24 he proved a considerable number of disbursements. In the view which the court has adopted of the composite demonstration, it becomes unnecessary to attempt to compute their precise aggregate. Definitely demonstrated were $500 for funeral expenses; $35 for fees to the attorney for the estate; $35 for oxygen administered to the decedent; $9.75 for druggist's supplies; $85 for doctors and nurses; $75 for a grave, and $208.61 for debts owed by the decedent at the time of his death, giving a total of $947.36, or something less than four times the total of the demonstrated receipts from assets of the estate. The deficiency and many other alleged items. of expenditures, the validity of demonstration of which the court has not deemed it necessary to evaluate, were paid from the avails of the savings bank account to which reference has been made.

Since the respondent father-in-law, in the making of these expenditures, unquestionably acted as the authorized agent of the administratrix in a manner which would prevent her repudiation of his acts, the sole question of her right to any recovery in this proceeding for discovery resolves itself into one of whether or not the estate possessed any rights in the savings bank account.

The genisis of this account occurred on March 2, 1920, when the decedent opened account No. 615876 in his own name in the Dime Savings Bank of Brooklyn. On May 26, 1922, prior to his intermarriage with the petitioner, the balance therein was transferred by him to a new account in the same institution, numbered 672914, which was opened in the name of Alexander Christie, in trust for Peter Christie. It so continued until a time subsequent to the death of the decedent.

Over the objection of the respondent, expressly interposed under section 347 of the Civil Practice Act, the administratrix-widow was permitted to testify respecting personal transactions with the decedent relating to this account. These objections were overruled by the learned referee, EMIL N. BAAR, Esq., and subsequent motions to strike out the testimony thus adduced were denied. On the faith thereof the referee has determined that the tentative

trust which was brought into being by the initial opening of the account was revoked, and has awarded its avails to the administratrix on the stated theory that the inhibition of section 347 affects merely testimony " against the administratrix," and that this was in her favor. This ruling is assigned as error, and the confirmation of the report is opposed upon this, as a primary ground.

The evaluation of this contention requires an analysis of the provisions of section 347 in so far as it is potentially pertinent to the present situation. In approaching its consideration it is of value to recall that the purpose of the enactment as presently existing and of its several predecessors, which run back through section 829 of the Code of Civil Procedure to section 399 of the old Code of Procedure, " was to prevent a person who was or who might be assumed to be a partisan witness from giving his version of a transaction with another who was deceased and could not speak." (*Abbott* v. *Doughan*, 204 N. Y. 223, 226.) The situations in which this condition may be present are obviously numerous, and some of the prevalent failure of comprehension of the scope of the enactment is conceivably due to the fact that its terms, by the broadness of their language, attempt to embrace all situations of this general variety, with the result that a casual reader, who discovers that certain of its terms do not embrace the facts of his individual situation, may be inclined to overlook other phraseology which brings him within its scope.

The most lucid exposition with which the court is familiar of the extent of applicability of the enactment is that contained in the latest edition of Dean Richardson's invaluable treatise on Evidence (Richardson on Evidence [5th ed.], §§ 462–470), in which the learned author analyzes its import from six points of view, namely, (1) in what proceedings the section is applicable; (2) who is disqualified; (3) as a witness for whom; (4) against whom; (5) concerning what; and (6) exceptions to the general rules. The answers to these questions are readily discoverable from the language of the act itself as authoritatively interpreted.

1. It is applicable " upon the trial of an action or the hearing upon the merits of a special proceeding." The latter term includes all proceedings in the Surrogate's Court which have for their immediate object an affirmative determination affecting the rights of any party thereto. (Gen. Const. Law, § 46-a; Civ. Prac. Act, §§ 4, 5.) It does not include a mere preliminary inquiry under section 263 of the Surrogate's Court Act, which seeks only the scrutiny of the acts of the fiduciary. (*Matter of Van Volkenburgh*, 254 N. Y. 139, 143.)

2. Those incompetent to testify are: (a) " a party or person interested in the event," or (b) " a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise."

The significant word in each of these clauses is " interested." the basic test of which is whether or not the tendered witness " will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action." (*Hobart* v. *Hobart*, 62 N. Y. 80, 83; *Wallace* v. *Straus*, 113 id. 238, 242; *Talbot* v. *Laubheim*, 188 id. 421, 426; *Laka* v. *Krystek*, 261 id. 126, 130; *Kerwood* v. *Hall*, 201 App. Div. 89, 93.)

Whereas it has been held that " the interest to disqualify must be a present, certain and vested interest and not an interest uncertain, remote or contingent " (*Matter of McCulloch*, 263 N. Y. 408, 413), a person entitled to share in the distribution of the assets of an estate, either as a distributee in intestacy (*Holcomb* v. *Holcomb*, 95 N. Y. 316, 324; *Downey* v. *Owen*, 98 App. Div. 411, 419) or as a legatee (*Lane* v. *Lane*, 95 N. Y. 494, 501) is obviously directly interested in a recovery of assets by the fiduciary thereof and come within the inhibition of the section, irrespective of whether or not he, himself, occupies such fiduciary position. So, also, an executor who has paid a claim is " interested " so as to preclude his testimony respecting personal transactions with the decedent tending to indicate the validity of the claim. (*Matter of Smith*, 153 N. Y. 124, 128.)

Although it is established that the magnitude of the financial interest, if one exists, is immaterial (*Matter of Radley*, 228 App. Div. 119, 122), there are certain interests which, either by judicial decision or by additions to the statute itself, have been determined to be insufficient to supply incentives to perjury, the prevention of which is the primary purpose of the enactment. Prominent in this connection are the interest of a fiduciary by reason of his right to statutory compensation (*Matter of Wilson*, 103 N. Y. 374, 376), ownership of stock in a banking corporation which is a party to the proceeding, or possible liability for costs which may be awarded against him, the latter two of which have, by the language of the section itself, been declared not to constitute a disqualifying interest.

3. Such an " interested " person " shall not be examined " (a) " in his own behalf or interest " or (b) " in behalf of the party succeeding to his title or interest."

The test in this connection is obviously closely related to the considerations just reviewed. If the witness is tendered for the

purpose of establishing a state of facts which will inure to his personal profit, or to that of one who claims through him, he falls within the inhibition. (*Matter of Smith,* 153 N. Y. 124, 128; *Rosseau* v. *Rouss,* 180 id. 116, 122; *O'Brien* v. *Weiler,* 140 id. 281, 284.)

4. Such testimony may not be given " against (a) the executor, administrator or (b) survivors of the deceased person, or (c) the committee of a lunatic, or (d) a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise." (Civ. Prac. Act, § 347.)

When the varieties of opponents who are accorded protection under the wording of the statute are thus segregated, it will be observed that, whereas consisting of four enumerated categories of persons, they naturally group themselves into two classes, namely, *first,* those who occupy representative positions in respect of the estates of decedents and incompetents, and, *second,* those whose rights are ordinarily predicated upon relationships or transactions which have involved the decedent or incompetent himself prior to the time that he was rendered incapable of speaking for himself. The former of these two classifications, designated " a " and " c," are commonly understood, and for this reason as well as because they are not involved in the present record, do not require present consideration. The second, relating to " survivors," is of comparatively infrequent occurrence, and its invocation has been confined largely to the exclusion of the testimony of a surviving partner respecting personal transactions with one deceased. (*Manning* v. *Schmitt,* 4 App. Div. 131, 132; *Melkon* v. *Kirk & Co.,* 220 id. 180, 182; *Farley* v. *Norton,* 67 How. Pr. 438, 439; *Connolly* v. *Keenan,* 42 Misc. 589, 597.)

The final noted instance of exclusion is the one which is pertinent in the present case and is that concerning which most mental confusion appears to exist. The situation to which this portion of the section refers is clearly indicated in *Ward* v. *New York Life Ins. Co.* (225 N. Y. 314), in which the court says (at p. 319): " The great body of authority makes it plain, by inference at least, that when section 829 speaks of deriving title or interest from, through or under a deceased person it contemplates property or an interest which belonged to the deceased in his lifetime and the title to which passed by assignment or otherwise through him to the party who is protected by the section."

This is a substantial restatement of the observation in *Mattoon* v. *Young* (45 N. Y. 696, 700), that this portion of the enactment " shows an intention to exclude the testimony as to all persons who have succeeded to or acquired the right of the deceased, which was to be affected by the testimony."

Since questions of this type habitually arise at a time when the rights of the alleged successor to the title of the decedent are in issue, the practical effect of the enactment is that where the claim of title is predicated upon an assertion that it was derived from one deceased, the claimant is immune from attack through the medium of testimony by an interested person concerning personal transactions with the deceased tending to impeach such asserted title. This is demonstrated by the determination in substantially all of the decisions on the subject.

In *Mullins* v. *Chickering* (110 N. Y. 513) the plaintiff-widow delivered a piano to defendant as bailee. The executors of plaintiff's husband claimed it and defendant surrendered it to them. In a suit by the widow it was held (p. 514) that as defendant had elected to assume the position that his holding was derived under the title of the decedent, testimony of the widow respecting personal transactions with the decedent tending to show a gift by him to her was incompetent. *Downey* v. *Owen* (98 App. Div. 411) was an action in equity by administrators to set aside certain transfers to the defendant by the decedent as the product of fraud and undue influence. One of the administrators, who was a daughter of the deceased, was permitted to testify respecting personal transactions with him tending to demonstrate his mental condition as bearing upon the issue of undue influence.

In holding that this constituted reversible error, the court said (at p. 419): " This evidence was given by an administrator, but she was also interested in the event of the action, and Owen was a party claiming from, through and under the deceased."

In *Simmons* v. *Henry* (12 Civ. Proc. Rep. 204, reported by memorandum only, 43 Hun, 640) the plaintiff had assigned a policy of insurance to one Bernstein. The latter assigned it to the defendant and later died. Plaintiff sought to recover the policy from the defendant and offered testimony tending to show that the assignment to Bernstein was merely as security for a debt which had since been paid. The court held (p. 207) that the exclusion of such testimony was proper as " defendant claimed through Bernstein, and he being dead, section 829 of the Code of Civil Procedure made the plaintiff an incompetent witness to prove any transactions had between himself and Bernstein."

*Gordon* v. *Barney* (6 N. Y. St. Repr. 181, reported by memorandum only, 43 Hun, 633) was an action in replevin for certain property which a decedent had mortgaged to defendant's principals. Plaintiff was the wife of the decedent and testified to personal transactions with the decedent tending to demonstrate that title to the property in question had been transferred to her. On appeal

it was held (p. 183) that "such evidence was incompetent and prohibited by * * * section 829 of the Code" and that its admission constituted reversible error.

*Rice* v. *Daly* (20 N. Y. Supp. 941, reported by memorandum only, 66 Hun, 628) is to like effect on somewhat similar facts. (See, also, *Andrews* v. *National Bank of North America*, 7 Hun, 20; *Witthaus* v. *Schack*, 105 N. Y. 332, 340; *Matter of Carroll*, 153 Misc. 649, 659; modfd., on other grounds, 247 App. Div. 11; modfd., 274 N. Y. 288.)

An interesting illustration of the situations in which testimony in respect of personal transactions is and is not permissible is found in *Mason* v. *Prendergast* (120 N. Y. 536). The facts there demonstrated showed that a mother gave certain money to a daughter to hold, one-half for herself and the balance for the plaintiff. This fact was communicated to the plaintiff, who arranged with the daughter to continue the holding of her portion. After the mother's death the defendant induced the daughter to surrender all of such money to him. In an action by plaintiff to recover her share from the defendant it was held (p. 539) that the daughter's testimony was competent as to personal transactions with the decedent as defendant did not derive his title from the decedent, but that as against plaintiff, defendant's testimony as to personal transactions with the decedent was incompetent as plaintiff's title was derived from such decedent.

Whereas it is clear (*Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314, 320) that the inhibition does not extend to "a case where a party claims property from a third person which never belonged to the deceased and which in fact did not come into existence until his death," such as the proceeds of a life insurance policy made payable to a named beneficiary, the law is established that it is applicable to testimony concerning personal transactions with any decedent in the claimant's direct chain of title (*Pope* v. *Allen*, 90 N. Y. 298, 302; *Wangner* v. *Grimm*, 169 id. 421, 431), and when the determination in *Prouty* v. *Eaton* (41 Barb. 409, 414) is read in the light of the facts there present it is not a precedent to the contrary.

5. Continuing the analysis of the section, the testimony which is thereby excluded is that "concerning a personal transaction between the witness and the deceased person or lunatic." The connotation of this phrase is thoroughly established. "The words of exclusion are as comprehensive as language can express. Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews or actions between two persons, and include every method by which one

person can derive impressions or information from the conduct, condition, or language of another * * * Although it must appear that the interview or transaction sought to be excluded was a personal one, it need not have been private or confined to the witness and deceased. If they participated, it does not change its character because others were present." (*Holcomb* v. *Holcomb*, 95 N. Y. 316, 325. To like effect, see *Hines* v. *Hines*, 199 App. Div. 688, 692.)

" As between the two constructions of the statute to which * * * we are limited, I think we should adopt that which excludes the testimony of an interested witness to any knowledge which he has gained by the use of his senses from the personal presence of the deceased." (*Griswold* v. *Hart*, 205 N. Y. 384, 395.)

6. The exception to the applicability of the preceding rules is contained in the last clause of the first sentence of the presently-existing enactment. This reads: " except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence, concerning the same transaction or communication."

The effect of this saving clause is that whenever the person who is entitled to object to the competency of an interested witness himself testifies, he thereby " opens the door " to testimony by the interested witness, but only in respect of the same transaction. It will not permit the latter to " explain, impair or contradict the plaintiff's version by means of another and independent personal transaction or communication between himself and the deceased." (*Martin* v. *Hillen*, 142 N. Y. 140, 144.)

In order to be available, timely objection to the testimony must be interposed, otherwise it becomes an integral part of the record and must be considered in the attainment of the ultimate result. (*Hickok* v. *Bunting*, 67 App. Div. 560, 562. See, also, *Matter of Findlay*, 253 N. Y. 1, 11; *Flora* v. *Carbean*, 38 id. 111, 113.) The objection, when made, should be directed to the competency of the witness and not to the testimony itself. (*Hoag* v. *Wright*, 174 N. Y. 36, 39.)

Applying these principles to the case at bar, (1) the proceeding is one for discovery of assets, which, in effect, is a replevin in the Surrogate's Court (*Matter of Enright*, 149 Misc. 353, 355; *Matter of Hagan*, 157 id. 378, 381; *Matter of Donnelly*, Id. 319, 320; *Matter of Sichel*, 162 id. 2, 4), and is, therefore, a " special proceeding " within the contemplation of the section; (2) the testimony was given by the widow of the intestate, who, by reason of the pro-

visions of subdivision 1 of section 83 of the Decedent Estate Law, is entitled to receive one-third of any assets recovered in the proceeding, and was, therefore, " interested in the event;" (3) she was examined in her own interest because the purport of her testimony was in support of the claim for recovery; (4) her testimony was adduced against a claim of title derived from the decedent by reason of the legal consequences of acts which the latter performed in his lifetime; (5) it concerned personal conversations with the decedent; (6) it was not elicited in contradiction of testimony voluntarily given by the respondent, since he gave no testimony whatsoever respecting personal transactions with the decedent; and (7) timely and proper objection was made to the testimony on behalf of the respondent prior to the introduction of the testimony and was supplemented by motions to strike out the evidence adduced over the objection.

This procedure was in direct violation of the rights of the respondent and constitutes reversible error. Under ordinary circumstances the only course open to the court would be to remit the case for further hearing. On the composite showing of the present record, this course is deemed unnecessary.

The uncontroverted demonstration is that the savings bank account in question was opened by the decedent himself on May 26, 1922, which is stated to have been long prior to his intermarriage with the petitioner.

It was opened in the name of the decedent " in trust for " the respondent. It so remained until after his death. There is no intimation that the respondent took any part in the initial opening and the record is devoid of any proof that he even knew of the mode in which it was carried until after the death of the intestate.

The legal results of such opening and continuance have been uncontrovertibly established since the pronouncement of the Court of Appeals in *Matter of Totten* (179 N. Y. 112), which enunciated the following oft-reiterated rules relating to so-called savings bank trusts at page 125: " A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

It is to the final sentence of this quotation that reference must be made for a determination of the rights of the present parties.

Its meaning is wholly obvious. Two methods are prescribed by which the putative settlor may in his lifetime destroy the tentative rights of the named beneficiary in the presumptive trust. The first is by a " revocation " of the trust. The second is by " disaffirmance " thereof by the act or declaration of the presumptive trustee. These two words have a clear and well-defined meaning in the legal literature respecting trusts. " Revocation " connotes the termination of a trust relationship which has theretofore come into valid being. " Disaffirmance " signifies a repudiation of the fact that the supposed trustee holds the *rem* in question in a fiduciary capacity and denies that any trust relationship is in existence.

In the present case there was no " revocation " of the trust as would readily have been possible by the sole act of the decedent in transferring the account to his own or some other name or names on some one of his frequent visits to the bank. No such act was performed. The trust designation remained unaltered until the date of his death.

Did he at any time by word or act indicate an intention, belief or understanding that no tentative trust had initially been created, that the respondent possessed no prospective rights therein, and that the account was his own unqualified property? On the contrary, all of the incompetent testimony of the widow, which alone bears on this feature of the case, demonstrates a clear understanding on his part that a tentative trust had come into being, the prospective rights of the respondent in which would mature unless he performed some act of revocation in respect thereof.

The authorities concerning the necessary " decisive act or declaration of disaffirmance " to rebut the presumption of the initial creation of the trust are few in number. All enunciated since the date of the pronouncement in *Matter of Totten* involved either the execution of a will by the depositor which made a specific bequest of the avails of the " trust " (*Matter of Schrier*, 145 Misc. 593, 597; *Moran* v. *Ferchland*, 113 id. 1) or the demonstrated inclusion thereof in the computations of the testator upon which his will was predicated. (*Walsh* v. *Emigrant Industrial Savings Bank*, 106 Misc. 628; affd., 192 App. Div. 908; affd., 233 N. Y. 512; *Matter of Beagan*, 112 Misc. 292; *Matter of Richardson*, 134 id. 174.) *Morris* v. *Sheehan* (112 Misc. 222; affd., 199 App. Div. 968; affd., 234 N. Y. 366), upon which the learned referee here relies, is not in point. There Mr. Justice FORD, at Special Term, determined from the evidence adduced before him that no trust had been

intended in the first instance. This was affirmed without opinion by the Appellate Division and the Court of Appeals deemed itself unauthorized to review the facts. No similar intimation is here made. The initial intention to erect a tentative trust is not only in no wise impugned, but is clearly demonstrated by the petitioner's testimony.

It is, accordingly, apparent that even had the interested testimony of the widow been competent and were it to be accepted at its face value it furnishes no basis for a decision that the natural method of devolution of the balance in the account at the death of the intestate was altered by anything which transpired during his lifetime.

Even were the contrary the fact, however, the court would be unable to concur in the conclusion of the referee that the testimony of the widow is entitled to be accorded credence. The record clearly demonstrates that she was guilty of gross overstatement, if not, indeed, of deliberate perjury. In referring to the bank account, and obviously engaged in a successful attempt to arouse the sympathy of the learned referee, she said: " I told Mr. Christie that that money belonged to me; I worked ten or twelve years for it * * * I tried to save every penny we could, put it away." The effect of this testimony upon the learned referee is shown on page 7 of his report, in which he refers to the supposed desire of the decedent " to provide for his wife *who had done as much as he had in accumulating the small estate.*" (Italics not in original.) The transcript of the account in question, which is in evidence as petitioner's Exhibit 2, rather mars this interesting picture of the faithful and hard-working wife whose self-sacrificing devotion had contributed to the creation of this account. As hereinbefore noted, this demonstrates that subsequent to August 15, 1927, the grand total of deposits in the account amounted only to three dollars and twenty-five cents, whereas during the same period the aggregate of withdrawals was $2,325. During more than eight years immediately preceding the death of the testator only the insignificant sum of three dollars and twenty-five cents had been " saved " and " put * * * away," whereas during this period over seventy times this amount had been withdrawn from his small capital, never to be returned. In view of this deliberate distortion of facts, this court, even had the testimony of the widow been competent, would have been compelled to reject it by application of the principle *falsus in unuo, falsus in omnibus*.

The composite demonstration of the record raises a strong inference that the decedent sagely and deliberately chose the course which he actually pursued; that having had ample evidence of the

improvidence of his wife, and desiring to provide for the future welfare of his infant son, he intentionally refrained from altering the mode of devolution of his only reasonably substantially asset, having confidence that when it reached his father's hands the latter would devote it to the welfare of this child. That he did not misjudge his father seems apparent from the fact that the latter promptly opened a new account in his name in trust for his infant grandson with such of the avails as were not necessary for the burial and solution of the obligations of the decedent.

The final conclusion of the learned referee, that the respondent should be compelled to pay over to the administratrix the estate assets which came into his hands without receiving benefit of the setoffs for the considerably greater disbursements made by him for the account of the estate, must also be disapproved on the demonstration of the present case. His acts in this regard were substantially those of her authorized agent. There is no intimation by any one that any claims of creditors of the estate are outstanding and unsatisfied, wherefore the sole opponents are those who are the parties to the present proceeding. Their rights have been fully litigated and there is no reason for doing this a second time. It has clearly been shown that in addition to the estate assets the respondent has expended in excess of $676.12 of money of which he was the sole legal owner in solution of the debts and funeral and administration expenses of the deceased. If, as the amended pleading of the petitioner asserts, the $500 funeral was too elaborate in view of the size of the estate, half of its expense may be allocated against the personal contribution of the respondent, which will reduce his demonstrated but worthless claim against this wholly insolvent estate to $426.12.

On the record as a whole and for the reasons stated, the court determines the present proceeding to be without legal justification, and it will be dismissed upon the merits, with costs.

Enter decree on notice in conformity herewith.