In the Matter of the Estate of ELIZABETH CASHMAN, Deceased.

Surrogate's Court, Orange County, June 26, 1936.

*O'Brien & Mahoney* [*Philip A. Rorty* of counsel], for the proponent.

*George F. Kaufman*, for the residuary legatee.

*Kopald & Haft* [*Henry Hirschberg* of counsel], for the contestant.

TAYLOR, S.   By her last witness in this will contest, the contestant offered the testimony of the decedent's attending physician. A number of questions were asked and answered without objection as to the qualification of the witness and the fact that he had been the decedent's attending physician.   These questions and answers were proper for they merely showed the status of the witness.

(*Hampton* v. *Boylan*, 46 Hun, 151; *Martin* v. *Platt*, 51 id. 429; *Matter of Carter*, 122 Misc. 493; *Entian* v. *Provident Mutual Life Ins. Co.*, 155 id. 227; *Klein* v. *Prudential Ins. Co.*, 221 N. Y. 449.)

After this preliminary examination this question was asked of the physician, "At that time in 1932, what did you *find* in connection with her condition? " (Italics mine.) This question was objected to upon the ground of privilege, whereupon the contestant stated that if it be assumed that the answer called for by this question was privileged under section 352 of the Civil Practice Act then under section 354, the contestant, being an heir at law, waived such privilege. The objection was sustained and the answer excluded.

This question of privilege on the part of physicians and attorneys did not exist at common law. (*Edington* v. *Ætna Life Ins. Co.*, 77 N. Y. 564.)

Prior to the enactment of the Code of Civil Procedure in 1876, and under the Revised Statutes, it was provided that the physician shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which information was necessary to enable him to act in that capacity. (See 2 R. S. 406, § 73; 3 id. [6th ed.] p. 671, § 119.) It will be noted that this statute did not provide for any waiver whatever, but in the enactment of the Code of Civil Procedure it was provided that the prohibition should " apply to any examination of a person as a witness," unless it was " expressly waived " by the patient. (Code Civ. Proc. § 836; *Westover* v. *Ætna Life Ins. Co.*, 99 N. Y. 56, 60.) Until 1891 there was no provision for waiver by any one other than the patient and in that year the section was amended to provide for waiver on the " trial or examination by the personal representatives of the deceased patient." (Laws of 1891, chap. 381.) An amendment in 1893 added these words " or if the validity of the last will and testament of such deceased patient is in question, by the executor or executors named in said will, or the surviving husband, widow or any heir at law or any of the next of kin, of said deceased, or any other party in interest." (Laws of 1893, chap. 295.)

It is axiomatic in the construction of statutes that changes in legislation should be studied in connection with the decisions of the courts relating thereto, to determine the evil or limits the statute sought to remedy. (*Clifford* v. *Denver & Rio Grande R. R. Co.*, 188 N. Y. 349; *Matter of Sonderling*, 157 Misc. 231; *Archer* v. *Equitable Life Assur. Soc.*, 218 N. Y. 18; *Wiley* v. *Solvay Process Co.*, 215 id. 584; *People ex rel. Wood* v. *Lacombe*, 99 id. 43; *Bell* v. *Mayor, etc.*, 105 id. 139; *Riggs* v. *Palmer*, 115 id. 506; *City Bank Farmers' Trust Co.* v. *New York Central Railroad*, 253 id. 49; *Matter of McCarthy*, 158 Misc. 287.)

Turning now to a well-known text book upon the subject and the edition published shortly after the last-mentioned amendment to this Code of Civil Procedure section (Redfield Law & Practice of Surrogates' Courts [5th ed. 1894], p. 145), when the purpose of the amendment must have been fresh in the author's mind, we find this comment: "A large number of decisions on the subject of the qualification of a physician to testify from knowledge acquired while attending a patient have been superseded (or else made statutory law) by the amendment of section 836 adopted in 1892. It was formerly established that a physician who had attended the deceased in a professional capacity, was not a competent witness to testify, from knowledge acquired while attending him, as to his mental capacity, although he might testify to any knowledge attained from personal acquaintance with the decedent *before* his professional relations with him commenced, and *after* they ceased. By the amendment referred to, the disqualification of a physician or surgeon to testify, etc., is limited to the disclosure of ' confidential communications, and such facts as would tend to disgrace the memory of the patient: with this exception, he may ' disclose any information as to the mental or physical condition ' of his deceased patient, which he acquired in attending him, *only however*, when ' the personal representatives of the deceased patient, or, if the validity of the last will and testament of such deceased patient is in question, the executor, or executors, named in said will, or the surviving husband, widow, or an heir at law, or any of the next of kin of said deceased, or any other party in interest,' shall expressly waive the statutory disqualification."

It will be noted that the author states that a large number of decisions were superseded or else made statutory law by this amendment and a reference to just a few of the cases will indicate the correctness of that statement; for instance, in *Grattan* v. *Metropolitan Life Ins. Co.* ([1880] 80 N. Y. 281) it was held that the attending physician might not testify to any knowledge which he acquired even through his sense of sight and not by means of any communication to him by the patient. The court said: " The third question is of two clauses; the second clause limits and explains the first, *but however considered*, was inadmissible. The observation which he might have made, and the physical examination to which the patient was subjected, *were permitted to him in his character* of physician, and not otherwise. Though the patient had been dumb, it would make no difference. The communication to his sense of sight is within the statute, as much so as if it had been oral and reached his ear. * * * It is enough that the witness acquired the information in his character as physician and in the

due and proper exercise of his calling. Nor was it necessary for the plaintiff to show in the first instance, by formal proof, that the information was necessary to enable the witness to prescribe. Such, under the circumstances of this case, is the inevitable inference."

To illustrate this point further, it was said in *Edington* v. *Mutual Life Ins. Co.* ([1876] 67 N. Y. 185, 194): " When it [the statute] speaks of information it means not only communications received from the lips of the patient but such knowledge as may be acquired from the patient himself, from the statement of others who may surround him at the time, or from observation of his appearance and symptoms. Even if the patient could not speak, or his mental powers were so affected that he could not accurately state the nature of his disease, the astute medical observer would readily comprehend his condition. Information thus acquired is clearly within the scope and meaning of the statute."

On the other hand, it was held in a number of cases that a physician might testify to the same facts as would be acquired by a layman under similar circumstances. (*Steele* v. *Ward*, 30 Hun, 555; *Matter of Darragh*, 52 id. 591; *Matter of Halsey*, 2 Con. 220; *Brown* v. *Rome, W. & O. R. R. Co.*, 45 Hun, 439.)

This confusion in the cases may be further explored through *Clifford* v. *Denver & R. G. R. R. Co.* (188 N. Y. 349); *Matter of Coleman* (111 id. 220); *Renihan* v. *Dennin* (103 id. 573); *Edington* v. *Ætna Life Ins. Co.* (77 id. 564).

Reverting to the statute as it now stands (Civ. Prac. Act, § 354), we find that it provides: " But a physician  *  *  *  may disclose any information as to the mental or physical condition of a patient who is deceased, which he acquired in attending such patient professionally, *except confidential communications* and such facts as would tend to disgrace the memory of the patient, when the provisions of section three hundred fifty-two have been expressly waived  *  *  *  by the executor or executors named in said will or the surviving husband, widow or any heir at law or any of the next of kin, of such deceased, or any other party in interest." An unqualified and unlimited right of waiver to the patient himself is given by the first sentence of section 354, but by the next sentence the right of waiver to the executor, etc., is prohibited as to confidential communications, or as expressed in *Mulligan* v. *Sinski* (156 App. Div. 35, 38; affd., 214 N. Y. 678), " The power of a personal representative  *  *  *  is not as broad as that of the patient himself." (See Richardson Ev. [4th ed.] § 503.)

With this demonstration of the distinction made by the statute in these two different situations, we need to analyze the question, "At that time in 1932, what did you *find* in connection with her

condition? " Obviously, this question is too broad and too all inclusive. By using the word " find " the witness would be permitted to testify to or base his conclusion upon what he discovered or ascertained by search or study or especial effort of any kind. (See " Find," Funk & Wagnals Dict.; also 25 C. J. 1132.)

Quite similar to the question put in this case was that asked in *Lippe* v. *Brandner* (120 App. Div. 230): " Q. Referring, now, please, to the times when he came to your office and was consulting you professionally, will you state to the jury the condition of mind that you *found* him in and what the mental disease was, if any, you *found* him suffering from at that time in August, 1902? " It was held that the sustaining of the objection to this question was proper, for " it related solely to confidential communications and to such facts as would tend to disgrace the memory of the patient " (p. 232).

The other question to which proper objection was made and the answer to which was excluded is: " Doctor, based upon your experience and *observation* of her and your *treatment* of her at the times you have stated, in your opinion, on March 6th, 1935, being the date the alleged Will and Testament is claimed to have been executed by her, was she of sound and disposing mind and memory? " I am of the opinion that this question was too broad and, therefore, permitted the witness to base his answer upon confidential communications made to him by the decedent. By " observation " the witness might very well have based his opinion upon not only his observation by his sense of sight but have supplemented this means of acquiring knowledge by questions to or voluntary oral statements by the decedent. It is submitted also that the physician's " treatment " of the deceased was based not only upon his observation but upon the decedent's confidential communications to him. It would be quite unfair and improper to conceal in the question and answer confidential communications by the patient to her physician and to put the executor to the risk of bringing out on cross-examination the fact that the physician's answer was based upon these confidential communications.

The statute, as before noted, does not permit the personal representative, heir, etc., to waive the question of privilege with respect to (1) confidential communications, and (2) such facts as would tend to disgrace the memory of the patient. The prohibition is equally strong in both cases, and, therefore, *Mulligan* v. *Sinski* (156 App. Div. 35; affd., 214 N. Y. 678) is pertinent here, in that the court held the question, " Doctor, can you state, from your examination of the deceased and the treatment that you gave her, what was her mental condition?" was improper, for in that case by the question counsel sought to elicit facts which would tend to dis-

grace the memory of the decedent. It may be noted, too, that the question in the *Mulligan* case is very similar to the phraseology of one of the questions in the instant case.

Public policy is the reason for the existence of this statute. The revisers' note to the Revised Statutes states that " But surely the necessity of consulting a medical adviser, when life itself may be in jeopardy, is still stronger. And unless such consultations are privileged, men will be incidently punished by being obliged to suffer the consequences of injuries without relief from the medical art, and without conviction of any offence. Besides, in such cases, during the struggle between legal duty on the one hand, and professional honor on the other, the latter, aided by a strong sense of the injustice and inhumanity of the rule, will in most cases furnish a temptation to the perversion or concealment of truth, too strong for human resistance." (See R. S. pt. 3, chap. 7, tit. 3 [2 R. S. 406], § 73, proposed § 79; re-enacted by Code Civ. Proc. § 834; now Civ. Prac. Act, § 352.)

While it may not be against public policy to permit the patient himself to waive this privilege without limitation, nevertheless, reason dictates that after one's death his memory should be protected even as against his executor, heirs, etc.

The motion for a new trial is denied.