In the Matter of the Estate of HARRY P. WILLIAMS, Deceased.

Surrogate's Court, New York County, December 28, 1942.

*Emile E. Rathgeber* for Hazel C. Williams, as executrix, petitioner.

*James N. Vaughan* for Hazel C. Williams, individually, respondent.

*Warren C. Fielding,* for Andrew A. Fraser, objectant-claimant, respondent.

DELEHANTY, S.   In this accounting proceeding the primary question presented for determination is whether or not deceased was indebted to objectant.   The latter asserts a debt for legal services and asserts that transfers made by deceased in the year 1933 should now be reversed by the court at least to the extent necessary to pay objectant the amount found by the court to be due him.   To the claim of objectant there are interposed defenses of payment, of the Statute of Frauds, of the Statute of Limitations and of denial that the services, if any, rendered by claimant to deceased were rendered under circumstances which created either an express or implied obligation on his part to pay therefor.   Deceased died on March 14, 1941.   He was absent from the State of New York during the eight months between February 23, 1940, and October 23, 1940. It follows that any undischarged contract liability of his incurred on and after July 14, 1934, was his liability when he died.   Concededly the claim of objectant against deceased's estate was filed within the period of extension of the statute occasioned by the death of deceased.

The defense of payment will be first considered.   The record establishes that deceased was prompt in the discharge of his known obligations.   It establishes that none of the services now charged for by objectant was ever billed to deceased though rendered long before he died.   It establishes that deceased probably had no expectation that he would be billed for these services.   The court holds that the testimony by some friends of deceased of table talk of his at a gathering with them just before he left the State in February, 1940, does not establish any admission of legal liability to objectant on the part of deceased.   On this subject of deceased's alleged admissions it is necessary to comment on some testimony which was excluded by the court under section 353 of the Civil Practice Act.

A witness who is now a law partner of objectant was called by the latter presumably to testify to an admission by deceased. At the time of the incident concerning which the witness was apparently willing to testify the witness was an independent practitioner.   He had been called in as trial counsel in the action by the People of the State of New York against deceased. He had none but professional relations with deceased.  He was engaged in such professional relations at the time of the incident in which, as the court must assume, some statement was made

by deceased which the witness would report to be in the nature of an admission of liability to objectant. If that was not the nature of the proffered though excluded testimony the report by the witness of his talk with deceased would have been irrelevant and immaterial. In a setting such as existed at the time of the incident an attorney at law is forbidden by the statute to reveal his client's declarations.

Section 353 of the Civil Practice Act declares a *public* policy. The section is often misconstrued by attorneys as creating a privilege to *them* but in truth it declares a right inhering in the *client* and not in the attorney. " It is to the client, and not to the attorney, that the law extends a privilege * * *." (*Bankers' Money Order Association* v. *Nachod,* 120 App. Div. 732, and cases cited.) The section is a mere re-enactment of the common-law rule. (*Hurlburt* v. *Hurlburt,* 128 N. Y. 420, 424.) That common-law rule was discussed in *Whiting* v. *Barney* (30 N. Y. 330) by SELDEN, J., who reviewed at length the history of the rule and sought to establish as the law the idea that the only communications of the client in respect of which he was privileged were those made in the progress of a particular legal controversy. The court did not adopt the views of SELDEN, J., but by a *per curiam* decision held that the particular communication in issue in that case was not a confidential one since other parties were present at the time it occurred. Later and in *Root* v. *Wright* (84 N. Y. 72, 76), the area of the rule is stated thus: " The rule that an attorney cannot disclose communications made to him by his clients is not, as now understood, confined to communications made in contemplation of, or in the progress of an action or judicial proceeding, but extends to communications in reference to all matters which are the proper subject of professional employment [citing cases]." The precise question whether a lawyer might testify to an admission of liability by his client was passed on in *Loveridge* v. *Hill* (96 N. Y. 222). In that case the declarations of the attorney respecting such admissions were stricken out as privileged. An attorney is forbidden to disclose information obtained by him from a client " when such information could be made the basis of a suit against his client." (*Miller* v. *Stern,* 262 App. Div. 5, 7, citing *Matter of Shawmut Mining Co.,* 94 App. Div. 156, 163.) The last-cited case explicitly holds that an attorney is forbidden to disclose communications from a client which would identify him with transactions that might involve him in liability.

In the case of a dead client there exists no power anywhere to waive the privilege. The area of the privilege of the client

is limited only by section 354 of the Civil Practice Act and only provided the controversy concerns a will or concerns an instrument affecting the construction of a will. Otherwise the bar of the statute is absolute. An attorney ought not permit himself any liberty of speech which might cause him to be suspected of disclosing his client's confidences. The nature of the client's privilege is such that the lawyer has the affirmative duty to keep silence respecting all confidences of his client until compelled by court ruling to disclose them in a proper case.

The court has digressed from the consideration of the defense of payment to make comment on the matter of admissions since if such admissions were proved they would negative at once the defense of full payment. The record shows that the deceased made full payment of every bill for legal service rendered to him. And the copartnership contract entered into by objectant with his present partners might be interpreted as an admission by objectant that he had no claim against deceased for the services which he now presses as a basis to his claim. Though the court recognizes these factors pressed by the accountant it is still of the opinion that there is shown by the record a body of service to deceased never billed for and hence never included in any payment made by deceased. Accordingly the court holds that the defense of full payment has not been established.

The defense of the Statute of Frauds seems inapplicable here because the public policy of the State writes into every contract between attorney and client a term which (despite any written text therein) authorizes a discharge of the attorney at any time without cause. (*Matter of Krooks,* 257 N. Y. 329; *Matter of Dunn,* 205 N. Y. 398.)

So far as the Statute of Limitations is concerned the court on the trial sustained it as a defense in respect of isolated items of service which were fully completed prior to July 14, 1934. One of these was the drawing of a will in the year 1933. Another was the drawing in 1933 of a contract respecting the shares of certain bus companies. Each of these transactions was a single item of service complete in itself. In respect of each there existed an immediate right to be paid as soon as the service was complete and since that right arose more than six years and eight months prior to deceased's death the defense of the Statute of Limitations was held good.

[The opinion next discusses the detail of services in respect of which the defense of the Statute of Limitations is held inapplicable; and an allowance is made to the objectant of $6,100.]

The allowances just made establish that objectant is a creditor of the estate and necessitate consideration of his objection to a transfer made by deceased in November, 1933. He seeks a ruling by the court which would nullify that transfer at least to the degree necessary to obtain for objectant full payment of his claim against the estate. The court is of the view that an objection thus formulated suffices to vest the court with jurisdiction to inquire into the transfer and to avoid it if necessary where the transferee is the accounting fiduciary. On this record there is no doubt of the court's power since the transferee has appeared formally in her individual character and has filed an answer disputing the claim against her as an individual by reason of such transfer and seeking confirmation of it.

The transfer is sought to be avoided under the provisions of article 10 of the Debtor and Creditor Law. That article contains substantially what is known as the Uniform Fraudulent Conveyance Act prepared by the Commissioners for the Promotion of Uniformity of Legislation in the United States. The new article has been held to be declaratory of existing case law so far as the substance of the creditors' rights is concerned. It distinctly improves the position of the creditors so far as matters of procedure are concerned. (*American Surety Co.* v. *Conner,* 251 N. Y. 1.) The article also establishes rules for determining who has the burden of going forward with the evidence. But after questions of procedure and of burden of proof are out of the way the essentials of the creditors' rights are what they were before the enactment of the article.

Preliminary note is made that deceased was not engaged in any business or transaction in which he required capital. At the time of the transfer he was not intending to enter into any future transaction in respect of which he would incur debts beyond his ability to pay. His work was that of an executive. He exchanged his services for the salary paid him. His employment did not involve any undertaking of personal liability on the part of deceased, except possibly for torts committed in his office. His debts, if any, could arise only outside his business or profession and not because of it. In other words. there existed in respect of this deceased none of the underlying factors which bring into operation sections 274 and 275 of the Debtor and Creditor Law. The court also excludes in this case the operation of section 276 of that law since the court finds as a fact that there was here present no actual intent on the part of deceased to defraud anybody. It holds that the transfer made in November, 1933, was the fulfillment of a plan entertained

long before by deceased though not effectuated until November, 1933.

Objectant is entitled to attack the transfer only if it was made while deceased was insolvent or if he was made insolvent thereby; and only if objectant's creditor position brings him within the class of persons entitled to make the attack. There is no serious contention by objectant that any uncompensated service of his prior to November 16, 1933, could or did render deceased insolvent. His brief relies for proof of insolvency upon the existence then of the claims asserted later by the Superintendent of Insurance in two civil actions. He points to the fact that the complaints in such actions demanded a total of more than $20,000,000 from the defendants generally and emphasizes that a settlement was made of the actions for $1,475,000. Objectant argues that an officer and director of a corporation who in conjunction with others commits an actionable tort in relation to the affairs of the corporation is responsible individually for the whole of the damage and may not say that he is liable only ratably. Objectant says in substance that the settlement reached establishes the existence of a liability of deceased for the sum of $1,475,000 arising by reason of acts of deceased before the transfer of November, 1933. Deceased never could have paid any such sum of money and if the contentions of objectant are sound the insolvency of deceased at the time of the transfer is established.

It seems incongruous for objectant in particular to assert insolvency of deceased for any such reason. Objectant was the adviser and attorney of deceased in respect of these claims by the Superintendent of Insurance. As attorney of record in one of the cases and as private counsel for deceased in the other he approved representations made in pleadings that deceased was guilty of no wrong and was subject to no liability. Outside the pleadings objectant took the same position in respect of deceased's liability. Neither objectant nor deceased initiated any settlement proposals. Each of them asserted that deceased would make no settlement which involved any acknowledgment whatever of liability. Objectant checked the form of the release to deceased and made sure that this final document delivered in return for deceased's contribution of $2,500 was so drafted as to adhere to deceased's and objectant's consistent position that deceased had done nothing wrong and was paying the trifling sum which he did pay solely to purchase peace and to terminate the expenses of the litigation. On this record the court finds no admission of liability by deceased and finds no proof that the

existence of alleged rights of action at the date of the transfer rendered deceased then insolvent even though deceased later paid a comparatively trifling sum in settlement of the claims.

Whether any basis existed for the actions of the Superintendent of Insurance has never been adjudicated in respect of any of the defendants. Whether, if such a right of action existed in respect of some of the named defendants, there coexisted basis for denial of liability on the part of this deceased has never been adjudicated. Since the determination of insolvency involves decision on a question of fact (*Fairfield Junior Corp.* v. *Standard Platinum Co.*, 260 App. Div. 935; *General Kontrolar Co.* v. *Allen,* 124 F. 2d 123; *Barr & Creelman Mill & Plumbing Supply Co.* v. *Zoller,* 109 F. 2d 924; *Eastern Sash & Door Co.* v. *Meister,* 99 N. J. Eq. 819; *Ferguson* v. *Jack,* 337 Tenn. St. 166), the court must say as a fact that nothing in the present record establishes the existence of any liability of deceased in either of the actions. The court must deal with realities and not with mere legal theories in determining the fact of insolvency. The statute approaches the question from a practical viewpoint and the court should do likewise. It cannot be ignored that deceased in a relative sense was of much smaller consequence than was the bank defendant in one of the actions. He was not nearly so likely to be called on for a contribution as were other individual defendants in the actions who had resources far greater than deceased's. His retention in November, 1933, of assets which had, as the court finds, a fair worth and salable value of $50,000 or more left him with resources ample " to pay his probable liability " in the actions. A fair appraisal of the situation which confronted him in November, 1933, and a fair appraisal of the situation which confronted him when the actions had been begun requires a determination by the court as matter of fact that deceased's resources were ample to pay any probable contribution which he might be called on to make by way of expenses of litigations not then begun or by way of settlement or by way of contribution to any judgment then probable in such future actions.

The transactions in relation to the insurance on deceased's life are attacked as in fraud of objectant. The court holds that in no real sense do the transactions of deceased with his policies constitute a transfer. Long before the making by deceased of loans on his policies he had designated his wife as the beneficiary thereof reserving a right to change his beneficiary. In order to borrow money on his policies and solely for that purpose he executed as required by the issuing company two changes of

beneficiary. The first of these made the consent of the beneficiary to the loan unnecessary. The loan having been accomplished, the second change re-established the *status quo ante* the loan. This is not the sort of transaction which can be regarded as a transfer in fraud of creditors.

There remain for determination the issues arising by reason of the amendment to schedule D-2 of the account and the supplemental objection to the claim of the accounting party thus asserted. Proof of the personal claim will be heard on the 21st day of January, 1943, at 10:00 a. m. Thereafter the court will rule on the objections which assert discrimination against objectant.

Proceed accordingly.