[752 NYS2d 353]

REIANNE MAYORGA, Respondent, v ROBERT TATE, Appellant.

Second Department, December 16, 2002

## APPEARANCES OF COUNSEL

*Pieper Hoban & Royce, P.C.*, Mineola (*Stephen P. Hoban* of counsel), for appellant.

*Jeffrey Levitt*, Amityville, for respondent.

## OPINION OF THE COURT

Per Curiam.

We hold that, just as the attorney-client privilege itself

survives the death of the client for whose benefit the privilege exists (see e.g. Matter of Riconda, 90 NY2d 733, 740; Matter of Matheson, 283 NY 44; Matter of Cunnion, 201 NY 123; People v Modzelewski, 203 AD2d 594; Downey v Owen, 98 App Div 411, 419; People v Vespucci, 192 Misc 2d 685; Matter of Weinberg, 133 Misc 2d 950, mod sub nom. Matter of Beiny, 129 AD2d 126; Randy Intl. v Automatic Compactor Corp., 97 Misc 2d 977), the right to waive that privilege in the interest of the deceased client's estate also survives, and may be exercised by the decedent's personal representative. Although a review of New York case law addressed to this issue reveals the existence of numerous unelaborated restatements of the erroneous proposition that "the power to waive the [attorney-client] privilege * * * end[s] with the death of the client" (Matter of Alexander, 205 Misc 894, 895; see Matter of Weinberg, supra; Matter of Trotta, 99 Misc 2d 278; In re Olson's Estate, 73 NYS2d 876; Matter of Williams, 179 Misc 805), such dicta are not binding as a matter of law, and are unpersuasive as a matter of logic. We agree with the statement of the authors of one treatise that "not allowing the personal representative to waive the privilege in an action in which the client would [have done so] if alive does not make much sense" (Martin, Capra, and Rossi, New York Evidence Handbook § 5.2.8, at 361-362).

The defendant in this case was the attorney for Mary J. Rerisi, and represented Ms. Rerisi in connection with a matrimonial action until Ms. Rerisi's death in 1993. It is alleged that the defendant committed legal malpractice during the course of that representation.

In 1995, the executor of Ms. Rerisi's estate assigned the estate's cause of action to recover damages for legal malpractice to the plaintiff, who is Ms. Rerisi's daughter, and the present action was commenced in 1996. The defendant opposed the plaintiff's efforts to obtain pretrial disclosure of the file that he maintained in connection with Ms. Rerisi's matrimonial action based on his assertion of the attorney-client privilege.

The Supreme Court held that the plaintiff, as the assignee of the executor of Ms. Rerisi's estate, effectively waived the attorney-client privilege, and that the defendant attorney could not invoke that privilege in order to avoid the requested discovery. We agree.

CPLR 4503 (a) (1) states, "Confidential communication privileged [nonjudicial proceedings]. Unless the client waives the privilege, an attorney * * * shall not disclose, or be allowed

to disclose [any] communication [made between the attorney and the client in the course of professional employment] * * *, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing" (emphasis supplied).

CPLR 4503 (b) states that in certain proceedings, including contested probate proceedings, an attorney may be required to disclose information as to the preparation of a will, subject only to the limitation that he or she not reveal any communication that would "tend to disgrace the memory of the decedent" (CPLR 4503 [b]). This provision operates as an exception to the general rule, noted above, that the attorney-client privilege survives the client's death (*see Matter of Weinberg, supra*; *Downey v Owen, supra* at 419).

The attorney-client privilege existed at common law as early as the reign of Elizabeth I (*see* Barker and Alexander, Evidence in New York State and Federal Courts § 5:3, at 289 n 1). The Court of Appeals has held that New York's attorney-client privilege statute (CPLR 4503) is "a 'mere re-enactment of the common-law rule'," and that, in order to determine the scope of the attorney-client privilege as it is currently constituted under the terms of CPLR 4503, "courts still must look to the common law" (*Spectrum Sys. Intl. Corp. v Chemical Bank*, 78 NY2d 371, 377, quoting *Hurlburt v Hurlburt*, 128 NY 420, 424; *see Charter One Bank v Midtown Rochester*, 191 Misc 2d 154, 165 n 10; *Matter of Colby*, 187 Misc 2d 695).

Prior to September 1, 1877, New York undoubtedly applied the common-law rules governing the attorney-client privilege, including the rules relating to waiver of the privilege (*see Matter of Cunnion, supra*). On that date, a statute took effect which codified the common-law privilege (former Code of Remedial Justice § 835, later Code of Civil Procedure § 835) as well as a statute (former Code of Remedial Justice § 836, later Code of Civil Procedure § 836) that, as the Court of Appeals subsequently held, expanded the privilege by narrowly defining, in a manner inconsistent with the common law, the circumstances under which the privilege may be waived (*see Matter of Cunnion, supra*). However, the intricately-worded provisions of the statutes under review in Cunnion (*supra*) are markedly different from the current provisions contained in CPLR 4503, and there is no basis upon which to depart from the determination of the Court of Appeals (*see Spectrum Sys. Intl. Corp. v Chemical Bank, supra* at 377) that, unlike the statutes under review in Cunnion (*supra*), CPLR 4503 in its current form, does indeed merely codify the common law.

As can be seen from a reading of the statute itself, CPLR 4503 (a) (1) expressly permits the "client" to waive the privilege. In New York, the rule is clear that when the particular client in question is incompetent, the client's conservator may act as a surrogate for the client, and waive the privilege on the client's behalf. Such a conservator "stands in the shoes of his [or her] conservatee and * * * may waive the attorney-client privilege" (*Rosenzweig v Bank of N.Y.*, 64 AD2d 599, 600, citing *Matter of Fairbairn*, 56 AD2d 259, 262). It is beyond question, then, that New York recognizes that the privilege may be waived by a surrogate decision maker in the context of an incompetent client. It would seem most incongruous to hold that the rule is to the contrary in the case of a client who is deceased (*see* Martin, Capra, and Rossi, New York Evidence Handbook § 5.2.8, at 362, *supra*).

It is in light of this logic that the common law has always provided that an executor may, in the interest of the estate, waive the attorney-client privilege of the deceased client. This is a rule which, according to one authoritative treatise (*see* 8 Wigmore, Evidence § 2329, at 640 [McNaughton rev 1961]), "is accepted with practical unanimity" (citing *Brooks v Holden*, 175 Mass 137, 55 NE 802; *see District Attorney for Norfolk Dist. v Magraw*, 417 Mass 169, 628 NE2d 24; *Marker v McCue*, 50 Idaho 462, 297 P 401; *Buuck v Kruckeberg*, 121 Ind App 262, 95 NE2d 304; *Eicholtz v Grunewald*, 313 Mich 666, 21 NW2d 914; *Canty v Halpin*, 294 Mo 96, 242 SW 94; *Estate of Hebbeler*, 875 SW2d 163 [Mo]; *In re Thomas' Estate*, 165 Wash 42, 4 P2d 837, *affd* 165 Wash 42, 7 P2d 1119; *Martin v Shaen*, 22 Wash 2d 505, 156 P2d 681; *In re Curtis' Estate*, 193 Kan 431, 394 P2d 59; *Scott v Grinnell*, 102 NH 490, 161 A2d 179; *Taylor v Sheldon*, 172 Ohio St 118, 173 NE2d 892; *Holyoke v Holyoke's Estate*, 110 Me 469, 87 A 40; Annotation, *Waiver of Attorney-Client Privilege by Personal Representative or Heir of Deceased Client or by Guardian of Incompetent*, 67 ALR2d 1268).

As recently recognized by Surrogate Roth in *Matter of Colby* (187 Misc 2d 695), there is no appellate authority in New York to support the proposition that the New York Legislature has enacted any statute that requires a departure from the common-law rule in this respect. There is, in other words, no authority binding on this Court that requires us to hold that, under the codification of the common law reflected in CPLR 4503, an executor acting in the interest of the estate has no power to waive the deceased person's attorney-client privilege.

The statement contained in the majority opinion in *Matter of Fishman* (32 AD2d 1063, *affd* 27 NY2d 809) which might be construed as supporting the rule that the attorney-client privilege becomes absolutely unwaivable upon the client's death is, as demonstrated by Justice Hopkins' concurring opinion in that case, obiter dicta. Several decisions of other courts contain statements in support of the rule that the power to waive the privilege dies with the client; however, these statements also constitute nonbinding dicta devoid of precedential value (*see Matter of Weinberg, supra*; *Matter of Trotta, supra*; *Matter of Williams, supra*). Such statements are, in our view, likewise devoid of persuasive value, in that they fail to explain what line of reasoning might support the conclusion that a privilege designed to protect the interests of a person may not, after that person's death, be waived by that person's fiduciary in order to advance the interests of that person's heirs. Furthermore, these cases unquestionably embrace a rule which is contrary to the common law, and they thus contradict the subsequent Court of Appeals decision in *Spectrum Sys. Intl. Corp. v Chemical Bank* (*supra* at 377) in which it was expressly held that CPLR 4503 must be regarded as a mere codification of the common law.

The defendant asserts that the executor of Ms. Rerisi's estate, and hence the assignee of the executor, has no power to waive the attorney-client privilege, so that the file from which disclosure is sought must, prior to its disclosure, be redacted so as to protect any material within the scope of the privilege. This view is most definitely inconsistent with the rule prevailing at common law, and it is hence inconsistent with the holding of the Court of Appeals in *Spectrum Sys. Intl. Corp. v Chemical Bank* (*supra* at 377), according to which the common law is to serve as a guide in construing CPLR 4503. The authority cited in support of that position is traceable to Court of Appeals cases that interpret statutes which have long since been superseded.

*Matter of Cunnion* (*supra*), which has been cited in support of the proposition that, even under current statutory law (CPLR 4503), the attorney-client privilege becomes unwaivable upon the client's death (*see Matter of Trotta, supra*), does not in fact support that proposition. In *Matter of Cunnion* (*supra*) the testator had executed two successive wills, one in 1907 and one in 1908, but the later will, which contained dispositions different from those of the earlier one, could not be found after his death. The attorney who drafted both wills was called to

testify as to the content of the second will. The Court of Appeals held that this testimony was properly ruled inadmissible in light of the provisions of section 836 of the former Code of Civil Procedure, as amended in 1892, according to which, in a contested will proceeding, the testator's former attorney would be qualified to testify as to his or her dealings with the testator only if he or she were a subscribing witness of the will offered for probate. Because the 1908 will had been lost, the attorney was held unqualified to testify concerning its supposed contents. The present version of the relevant statute (CPLR 4503 [b]) contains no requirement that the attorney called upon to give testimony was a subscribing witness of the contested will. Thus, the precise holding of the *Cunnion* case has been statutorily overruled.

As noted above, the terms of the statute under scrutiny in *Cunnion* were significantly different from those of CPLR 4503. Section 836 of the former Code of Civil Procedure (as amended by L 1891, ch 381; L 1892, ch 514; L 1899, ch 53) provided that the prohibition against a lawyer's disclosure of a confidential communication received from a client applied "to any examination of a person as a witness unless * * * expressly waived upon the * * * examination by * * * the client." The statute went on to state a limited exception, pursuant to which an attorney, who was also a subscribing witness of a will, could give testimony regarding the will's preparation in a probate proceeding. The statute then provided that waivers of the prohibition against disclosure of attorney-client communications had to be made in open court, or pursuant to stipulation (*see Matter of Cunnion, supra*). The Court of Appeals held, essentially, that by expressly permitting those attorneys who were *also* subscribing witnesses of the wills prepared by them to testify in probate proceedings in connection with the preparation of such wills, the Legislature intended to prohibit such testimony by attorneys who had prepared contested wills, but who were *not* subscribing witnesses thereto. This decision thus has no bearing on the current provisions either of CPLR 4503 (a) or of CPLR 4503 (b), which are markedly different.

The dicta contained in the various New York cases to the effect that the attorney-client privilege becomes unwaivable upon the client's death may also be traceable to a failure to distinguish between the common-law attorney-client privilege, on the one hand, and the doctor-patient privilege, on the other hand. The doctor-patient privilege was unknown at common law, and New York was in fact the first jurisdiction to adopt a

statute recognizing such a privilege (*see Dillenbeck v Hess,* 73 NY2d 278, 283-284).

In *Westover v Aetna Life Ins. Co.* (99 NY 56), an action brought by an executor against the insurance company which had insured his decedent's life, the Court of Appeals held that the trial court committed reversible error in allowing the plaintiff-executor's attorney to elicit, from the decedent's former doctor, evidence concerning the decedent's mental health at the time of the decedent's alleged suicide. The Court applied what it defined as the "absolute and unqualified" (id. at 58) provisions of section 834 of the former Code of Civil procedure, which prohibited physicians, while being examined as witnesses, from disclosing any information obtained while attending a patient, and section 836 of the former Code of Civil Procedure, which provided that such privilege applied unless expressly waived by the patient. The *Westover* Court held that these former statutes were to be read so as to prohibit any person other than the patient himself or herself from ever waiving the doctor-patient privilege (*see Alberti v New York, Lake Erie & W. R R. Co.,* 118 NY 77; *cf. Matter of Coleman,* 111 NY 220).

The statutes under review in *Westover* (*supra*), part of the same complex statutory scheme under review in *Matter of Cunnion* (*supra*), underwent a series of amendments (*see* L 1891, ch 381; L 1892, ch 514; L 1893, ch 295; L 1899, ch 53; *see also Matter of Cashman,* 159 Misc 881, *affd* 250 App Div 871, *affd* 280 NY 681; *Thompson v Smith,* 70 US App DC 65, 103 F2d 936 [DC Cir]). The enactment of CPLR 4504 regarding the physician-patient privilege significantly changed the provisions of section 354 of the former Civil Practice Act by eliminating the requirement that any waiver of the physician-patient privilege be made expressly by the patient in open court or by stipulation, and by providing instead that " '[a]s is the case of the attorney-client privilege, waiver may, under the cases, be implied' " (*Lynch v Mutual Life Ins. Co. of N.Y.,* 55 Misc 2d 179, 181, quoting Second Preliminary Report of the Advisory Committee on Practice and Procedure [1958, at 92]). This amendment represented " 'a strong trend away from any strict limitation on [the] waiver' " (*Lynch v Mutual Life Ins. Co. of N.Y., supra* at 182, quoting Weinstein-Korn-Miller, NY Prac ¶ 4504.14). The current version of the statutory doctor-patient privilege, reflecting various amendments enacted subsequent to the *Westover v Aetna Life Ins. Co.* case (*supra*), expressly allows executors, among others, to waive the doctor-patient priv-

ilege on behalf of their decedents (*see* CPLR 4504 [c]; *Holcomb v Harris,* 166 NY 257; Barker and Alexander, Evidence in New York State and Federal Courts § 5:20, at 353).

Thus, *Westover v Aetna Life Ins. Co. (supra), Matter of Cunnion (supra),* and other cases construing the terms of the 19th century Code of Civil Procedure, are of no value in construing the contours of the common-law attorney-client privilege as currently codified in CPLR 4503. Appellate Division decisions in cases such as *Rosenzweig v Bank of N.Y. (supra* at 600) and *Matter of Fairbairn (supra),* involving waiver of the attorney-client privilege by conservators, require the conclusion that the rule of the *Westover (supra)* and *Matter of Cunnion (supra)* cases no longer has any application in defining the scope of the attorney-client privilege, or the circumstances under which it may be waived. Similarly, the directive of the Court of Appeals in *Spectrum Sys. Intl. Corp. v Chemical Bank (supra* at 377) that CPLR 4503 be interpreted in accordance with the common law leaves no doubt as to the irrelevance of *Matter of Cunnion (supra)* which expressly departed from the common-law rule in obedience to a strict statute no longer in existence.

We are aware that certain proposed legislation (2001 NY Assembly Bill A 1437), in accordance with which a new CPLR 4501-a would have explicitly authorized certain types of personal representatives to waive certain privileges, including the attorney-client privilege, in defined proceedings and under defined circumstances, was recently vetoed by the Governor (Veto Message No. 18). This legislation would have also permitted, in defined types of proceedings, such privileges to be waived by "any party in interest" (2001 NY Assembly Bill A 1437). That this amendment to the CPLR, which addresses many issues entirely different from the one presented in this case, was proposed, or that it was vetoed by the Governor, does not have any bearing on the question of whether the terms of CPLR 4503 as they currently exist permit the attorney-client privilege to be waived by the personal representative, or other surrogate decision-maker for "the client." Construing this statute in light of the common law (*see Spectrum Sys. Intl. Corp. v Chemical Bank, supra* at 377), we find that such waivers are permitted.

We conclude by returning to the basic thesis that it makes no sense to prohibit an executor from waiving the attorney-client privilege of his or her decedent, where such prohibition operates to the detriment of the decedent's estate, and to the

benefit of an alleged tortfeasor against whom the estate possesses a cause of action (see Martin, Capra and Rossi, New York Evidence Handbook § 5.2.8, at 361-362, supra). "That an executor * * * may exercise authority over all the interests of the estate left by the [decedent], and yet may not incidentally have the right, in the interest of that estate, to waive the [attorney client] privilege * * * would seem too inconsistent to be maintained under any system of law" (8 Wigmore, Evidence § 2329, at 639 [McNaughton rev 1961], supra). New York should not, in our view, adhere to the proposition condemned by Wigmore as "too inconsistent to be maintained." We therefore conclude that, under the terms of CPLR 4503, just as under the common law, an executor may waive the attorney-client privilege of his or her decedent (see Spectrum Sys. Intl. Corp. v Chemical Bank, supra at 377; Matter of Fishman, supra; Matter of Colby, supra; see also Martin v John Hancock Mut. Life Ins. Co., 120 Misc 2d 776).

We have examined the appellant's remaining contentions and find them to be without merit.

In accordance with the foregoing, the order appealed from should be affirmed, with costs.

SMITH, J.P., FRIEDMANN, ADAMS and TOWNES, JJ., concur.

Ordered that the order is affirmed, with costs.