Matter of Thomas (2019 NY Slip Op 08293)





Matter of Thomas


2019 NY Slip Op 08293


Decided on November 15, 2019


Appellate Division, Fourth Department


DeJoseph, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 15, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

&em;

[*1]IN THE MATTER OF THE ESTATE OF ANTHONY J. THOMAS, DECEASED.
IN THE MATTER OF THE ESTATE OF DOROTHY THOMAS, DECEASED.
GLORIA M. BORRELLI, AND TINA GAMBINO AND KELLY JO THOMAS, AS SUCCESSORS TO THE INTEREST OF JOSEPH M. THOMAS, PETITIONERS-APPELLANTS, 
v
TOM J. THOMAS, RESPONDENT-RESPONDENT. 






BOND, SCHOENECK & KING, PLLC, ROCHESTER (JONATHAN B. FELLOWS OF COUNSEL), AND ROTHENBERG LAW, FOR PETITIONERS-APPELLANTS.
ADAMS BELL ADAMS, P.C., ROCHESTER (ANTHONY J. ADAMS, JR., OF COUNSEL), AND BARCLAY DAMON LLP, FOR RESPONDENT-RESPONDENT. 


DeJoseph
 Appeal from a decree (denominated order) of the Surrogate's Court, Monroe County (John M. Owens, S.), entered August 21, 2018. The decree denied the petition and supplemental petition and denied petitioners' claim that Anthony J. Thomas held any ownership interest in New York State Fence Company at the time of his death. 
It is hereby ORDERED that the decree so appealed from is unanimously affirmed without costs.
Opinion by Dejoseph, J.:
Petitioner Gloria M. Borrelli, respondent, and nonparties Joseph M. Thomas and Daniel J. Thomas are the four children of Anthony J. Thomas and Dorothy Thomas (collectively, decedents), who died in April 2012 and August 2012, respectively (see Matter of Thomas, 148 AD3d 1764, 1764 [4th Dept 2017]). Petitioners Tina Gambino and Kelly Jo Thomas, as successors to the interest of their father Joseph, are decedents' granddaughters and were substituted as petitioners upon their father's death. Respondent was the named executor under decedents' respective wills and was appointed trustee to numerous trusts created by the wills (see id.). In a prior appeal, we remitted the matter to Surrogate's Court for further proceedings on the issue of ownership of certain stock in New York State Fence Company (NYSFC) after concluding that "[w]here, as here, an asset is not included in the inventory of the estate based upon respondent fiduciary's assertion that he is the owner of the asset, it is respondent's burden to show a legal and sufficient reason for withholding' the asset from the estate" (id. at 1765). Upon remittal, the Surrogate held a nonjury trial during which respondent, in his capacity as executor, [*2]waived decedents' attorney-client privilege, and decedents' former counsel thereafter testified that she did not include a specific bequest with respect to Anthony's NYSFC shares in his most recent will because Anthony had already transferred those shares to respondent. After the trial, the Surrogate concluded that respondent had in fact satisfied his burden and specifically established that the shares of NYSFC were sold and transferred to respondent prior to Anthony's death. Petitioners appeal, and we affirm.
The primary issue on appeal is one of first impression in this Department and requires us to determine whether an executor has the authority to waive a decedent's attorney-client privilege. The Second and Third Departments have answered that question in the affirmative, and we agree.
In Mayorga v Tate (302 AD2d 11 [2d Dept 2002]), the assignee of the executor of the decedent's estate brought a legal malpractice action against the decedent's attorney and sought to obtain pretrial disclosure "of the file that [the attorney] maintained in connection with" his representation of the decedent (id. at 12). The attorney refused to disclose the file, claiming that it was protected by the attorney-client privilege (id.). The trial court held that the assignee could waive the privilege and that the attorney could not invoke the privilege to avoid producing the requested discovery (id.). The Second Department affirmed, stating:
"We conclude by returning to the basic thesis that it makes no sense to prohibit an executor from waiving the attorney-client privilege of his or her decedent, where such prohibition operates to the detriment of the decedent's estate, and to the benefit of an alleged tortfeasor against whom the estate possesses a cause of action . . . That an executor . . . may exercise authority over all the interests of the estate left by the [decedent], and yet may not incidentally have the right, in the interest of that estate, to waive the [attorney client] privilege . . . would seem too inconsistent to be maintained under any system of law . . . We therefore conclude that, under the terms of CPLR 4503, just as under the common law, an executor may waive the attorney-client privilege of his or her decedent" (id. at 18-19 [internal quotation marks omitted]).
The Third Department endorsed that same view in Matter of Johnson (7 AD3d 959, 960-961 [3d Dept 2004], lv denied 3 NY3d 606 [2004]).
On appeal, petitioners contend that Mayorga and Johnson support waiver of the attorney-client privilege by an executor only if the waiver benefits the estate. Petitioners assert that excluding an asset from the estate would not benefit the estate or its beneficiaries and that those cases therefore do not support a waiver of the attorney-client privilege here inasmuch as any waiver would only benefit the executor respondent. The Second Department, however, has permitted the waiver of the attorney-client privilege under circumstances similar to those presented here (see Matter of Bassin, 28 AD3d 549, 550 [2d Dept 2006]).
In Bassin, the decedent died intestate and was survived by her son and daughter (id.). Several months before her death, the decedent executed a deed conveying certain real property to her son (id.). After the decedent's death, her daughter commenced a discovery proceeding pursuant to SCPA article 21, and the Surrogate's Court determined that the inter vivos gift of the subject real property was valid (Bassin, 28 AD3d at 550). The Second Department affirmed and held that
"The Surrogate's Court correctly allowed [the son], as administrator of the [*3]decedent's estate, to waive the attorney-client privilege and properly admitted the testimony of . . . the attorney who advised the decedent with respect to the deed transferring ownership of the subject real property to [the son]. [The attorney's] testimony provided the best evidence of the decedent's intent in executing the deed" (id.).
We find Bassin to be persuasive, and we therefore reject petitioners' contention that respondent should not have been allowed to waive the attorney-client privilege on decedents' behalf as executor due to his own self-interest in the testimony of the decedents' former counsel. Thus, we hereby join the Second and Third Departments in concluding that the attorney-client privilege may be waived by an executor.
Contrary to petitioners' further contentions, the Surrogate properly determined that respondent met his burden of demonstrating a legal and sufficient reason for withholding the NYSFC stock from the estate and the nature of the purported transaction between Anthony and respondent with respect to that stock. We note that, "inasmuch as this is a determination after a nonjury trial, [o]ur scope of review is as broad as that of the trial court' " (Cianchetti v Burgio, 145 AD3d 1539, 1540 [4th Dept 2016], lv denied 29 NY3d 908 [2017]). The decision of a court following a nonjury trial, however, "should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially [where, as here,] the findings of fact rest in large measure on considerations relating to the credibility of witnesses" (Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992], rearg denied 81 NY2d 835 [1993] [internal quotation marks omitted]). Further, "when conducting such a review, we must view the record in the light most favorable to sustain the judgment' " (Cianchetti, 145 AD3d at 1541).
Here, although respondent was "unable to produce" any stock certificates, the stock transfer ledger, or the corporate book for NYSFC, the absence of those records does not preclude a determination that a stock transfer to respondent occurred prior to Anthony's death. While "the books of a corporation are prima facie evidence of stock ownership, they are not conclusive, and testimony may be taken to aid in the determination as to who is the owner of the stock" (Matter of Steward, 229 AD2d 500, 500-501 [2d Dept 1996]). Similarly, in the absence of stock certificates, a court must examine other available evidence to determine stock ownership (see Zwarycz v Marnia Constr., Inc., 130 AD3d 922, 923 [2d Dept 2015], lv denied 26 NY3d 917 [2016]; Hunt v Hunt, 222 AD2d 759, 760 [3d Dept 1995]; Rocha Toussier y Asociados, S.C. v Rivero, 184 AD2d 397, 397-398 [1st Dept 1992]). Such evidence may include "corporate tax forms, or any other indicia of shareholder status" (Kun v Fulop, 71 AD3d 832, 834 [2d Dept 2010], lv denied 15 NY3d 701 [2010]; see Matter of Capizola v Vantage Intl., 2 AD3d 843, 845 [2d Dept 2003]).
We conclude that a fair interpretation of the evidence supports the Surrogate's determination that respondent met his burden of demonstrating a legal and sufficient reason for withholding the NYSFC stock from the estate. Respondent presented, inter alia, the testimony and evidentiary submissions of decedents' former counsel and a certified public accountant who had performed accounting work for NYSFC for 35 years as of the time of trial, which established that Anthony's shares of NYSFC had been transferred to respondent well before Anthony's death.
We further conclude that there is a fair interpretation of the evidence supporting the Surrogate's determination that the transaction was in the nature of a sale of the NYSFC stock. Indeed, there is no dispute that the subject shares were not transferred as a gift, and the evidence at trial established that Anthony transferred the NYSFC stocks to respondent in exchange for the [*4]continued payment of a salary to decedents after that sale and their retirement from NYSFC.
We also reject petitioners' related contention that any sale of the shares was void pursuant to the statute of frauds because the underlying agreement was not reduced to writing. In a prior order, the Surrogate denied that part of petitioners' cross application seeking such a determination. On the prior appeal from that order, petitioners never addressed that issue in their briefs, and we therefore deemed that issue abandoned (see Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]). Inasmuch as petitioners abandoned the statute of frauds issue on the prior appeal, they are effectively precluded from raising that issue now (see generally Rubeo v National Grange Mut. Ins. Co., 93 NY2d 750, 754 [1999]).
We further reject petitioners' contention that an adverse inference was warranted in this case because of respondent's failure to produce the corporate records. The party seeking sanctions for spoliation of evidence has the burden of demonstrating
"that the party having control over the evidence had possessed an obligation to preserve it at the time of its destruction, that the evidence was destroyed with a culpable state of mind, and that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense" (Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543, 547 [2015] [internal quotation marks omitted]).
While it is undisputed that respondent had a duty to maintain the corporate records, we agree with the Surrogate that petitioners' evidence failed to demonstrate that respondent destroyed the corporate book or that respondent had exclusive access to that book. Thus, we conclude that petitioners did not meet their "burden of establishing that [respondent] negligently lost or intentionally destroyed evidence" (Helm v Sung-Hoon Yang, 169 AD3d 1458, 1458-1459 [4th Dept 2019]). Under the circumstances and on the current record, " it cannot be presumed that [respondent is] responsible for the disappearance of the [corporate book]' " (id. at 1459), and therefore the Surrogate did not abuse his discretion in denying petitioners' request for an adverse inference (see generally id.).
We have considered petitioners' remaining contentions and conclude that none warrants modification or reversal of the decree.
Entered: November 15, 2019
Mark W. Bennett
Clerk of the Court